Carl HARNESS and Caroline Harness,
Plaintiffs–Respondents,

v.

Jackie WALLACE and Linda Wallace,
Defendants–Appellants.

No. 26653.

Missouri Court of Appeals,
Southern District,
Division One.

July 21, 2005.

Paul F. Sherman, Mann, Walter, Bishop & Sherman, P.C., Springfield, MO, for Appellant.

Janis Ellis McCain, Springfield, MO, for Respondent.

JAMES K. PREWITT, Judge.

Jackie Wallace and Linda Wallace ("Appellants") appeal the judgment of the trial court entered on October 8, 2004, in favor of Carl Harness and Caroline Harness ("Respondents"). Respondents sought title to property by adverse possession.

Appellate review in this non-jury case requires that the judgment be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Schaefer v. Rivers*, 965 S.W.2d 954, 956 (Mo.App.1998). The trial court's judgment is presumed valid, the burden is on the appellant to demonstrate its incorrectness, and due regard is given to the trial court to judge the credibility of witnesses. *Id.*

The property at issue is a 0.7–acre tract that lies south of the deeded south lot line of Respondents' land between that line and a fence in Oldfield, Missouri ("disputed area"). Respondents acquired property at 314 State Highway T ("Highway T property") bordering the disputed area, by warranty deed on June 26, 2002, from Marla Cook.

Cook acquired her interest in the Highway T property from her grandparents, Alma and Roger Adams, on September 11, 1996. Alma and Roger Adams acquired the Highway T property on July 1, 1952. At the time, there was a fence along the south line of the disputed area. The Adamses took care of the disputed area and built a shed for "storage and raising chickens."

After Cook acquired the Highway T property, she used the disputed area for the same purpose. At the time Cook sold her property to Respondents, the fence was still in the same location.

Appellant Jackie Wallace testified that his family used the disputed area as a driveway for ingress and egress to his property "as long as he can remember." Jackie's father, Dale Wallace, who lived next to the disputed area since 1942, testified that he never claimed the disputed area. The fence was in place when Dale Wallace purchased property "behind" Respondents' current land in 1947.

On September 6, 2002, Respondents filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunc-

tion and Quiet Title against Appellants. On October 9, 2002, Appellants counter-claimed for Ejectment, Trespass, and Declaratory Judgment. The trial was held on August 24, 2004. Respondents called Kenneth Buchanan, a registered land surveyor, who had examined the Highway T property and the disputed area. Buchanan's sketch of Respondents' property ("Exhibit 14") was introduced as a supplement to Respondents' legal description. Exhibit 14 displays the Highway T property and the disputed area:

On September 24, 2004, the trial court issued its Findings of Fact and Conclusions of Law, stating there was "no credible evidence that anyone believed the disputed area belonged to anyone other than [Respondents]" who "have [also] claimed ownership and held open and notorious title on disputed area since 1947." On October 8, 2004, judgment was entered declaring the disputed area owned by Respondents. Appellants filed Notice of Appeal on November 15, 2004.

In the first segment of their point on appeal, Appellants allege the trial court erred by admitting Exhibit 14, as it was "without [witness's] personal knowledge" and "in violation of Section 60.150, RSMO[.]" In the second segment of their point, Appellants contend the exhibit fails to show Respondents had adverse possession of the disputed area. Respondents counter that the exhibit was not admitted as evidence but, rather, as "an aid to the court," and that they satisfied the burden of proving adverse possession of the disputed area.

Appellants contend an adverse possession suit cannot be sustained unless the claimant establishes precise boundaries of the property and, absent such proof, the judgment is void and rests on speculation and conjecture. *Kitterman v. Simrall,* 924 S.W.2d 872, 877 (Mo.App.1996). This is proven by surveys and any visual indicators beyond "crude sketches." *Id.* Exhibit 14 does not appear to be a crude sketch.

Appellants offered testimony of D. Nelson Mackey, and Respondents offered the testimony of Kenneth Buchanan. Buchanan testified he prepared Exhibit 14 and his manner of doing so. Mackey testified to his experience surveying this area of Christian County in comparison to Exhibit 14. The need for precise boundaries occurs where the location of a disputed area is at issue. *Kitterman,* at 877–878. That is not an issue in this case, as the area appears to be known by the parties and its location is not in question.

■ Section 516.010, RSMo 2000 reads, in part:

No action for the recovery of lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

■ Under this statute, a party claiming ownership by adverse possession must prove that their possession is: (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the ten-year period prior to the commencement of the action. *Henderson v. Town & Country Grocers of Fredericktown, Mo., Inc.,* 978 S.W.2d 850, 855 (Mo.App.1998).

The trial judge is in a better position than this court to determine credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. *Crowe v. Clairday,* 935 S.W.2d 343, 346 (Mo.App.1996).

■ Hostile "possession must be opposed and antagonistic to the claims of all others, i.e., the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another." *Teson v. Vasquez,* 561 S.W.2d 119, 127 (Mo.App. 1977). Respondent Caroline Harness testified Cook's intent was to convey the disputed area along with the rest of the property. Cook testified that she believed she was selling Respondents the property that was encompassed by the fence line. Appellants contend that hostile possession re-

quires the intent of depriving the true owner of title, in accordance with the holding in *Teson*, 561 S.W.2d 119. Color of title is not a requirement of adverse possession but "serves to extend actual possession . . . to constructive possession[.]" *Id.* at 126.

■ Actual possession may be shown by claimant's present ability to control land and intent to exclude others from such control. *Id.* There was testimony regarding the location and use of the shed, the location of the fence, and of an inoperable school bus on the disputed property. This satisfies the elements of hostile possession and actual possession.

■ Open and notorious possession "is satisfied when there are 'visible acts of ownership' exercised over the disputed property." *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo.App.1998). Cook testified that her grandparents used the disputed area for working on motor vehicles, raising poultry and burning trash. Cook further testified Respondent Jackie Wallace asked her to clean up the trash and remove the bus from the disputed area. She contends she never tried to hide ownership of the disputed area. She testified to the accuracy of photos showing the fence along the disputed areas as existing prior to 1952. Respondents testified that after they acquired the property in 2002, they continued to clean up the disputed area. That Respondents and their predecessors exercised open and notorious possession was sufficiently shown to warrant the judgment.

■ A claimant must show exclusive possession for the required period, but "[t]his does not mean that mere sporadic use, temporary presence or permissive visits by others (including the title holder) will defeat a claim of exclusive possession." *Machholz–Parks v. Suddath*, 884 S.W.2d 705, 708 (Mo.App.1994). Cook testified that she acquired her interest in the prop-

erty in 1996. Her grandparents had lived on the Highway T property since 1952. Cook and her grandparents used the property and believed it was owned by them. (T., 061) No evidence was presented that Appellants or anyone else violated this exclusivity. Appellant Jackie Wallace testified that he asked Cook and Respondents to move trash from the property. This element was met.

■ Adverse possession must be continuous for a period of ten years, which means without lapse and uninterrupted for the statutory period. *Moore v. Quirk*, 81 S.W.3d 717, 721 (Mo.App.2002). "An adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period." *Conduff v. Stone*, 968 S.W.2d 200, 203 (Mo.App.1998). The testimony which proved exclusivity also showed continuous use by Respondents and the property's previous owners for a period extending back to 1947.

■ Even if the sketch was improperly admitted, that does not require reversal. In a non-jury case, the rules excluding evidence are less-strictly enforced. *Gardner v. Robinson*, 759 S.W.2d 867, 868 (Mo.App.1988). If there is sufficient other evidence to support the judgment in a non-jury case, the judgment is not reversed because of the improper admission of evidence. *Id.*

Evaluation of the record for the requirements of adverse possession shows sufficient evidence to support the judgment. Thus, it is not necessary to determine if Exhibit 14 was improperly admitted.

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.