Edward WILLIAMS and Jeneth Williams, Plaintiffs–Respondents,

v.

Leonard FRYMIRE, Melissa Frymire, Beverly Frymire, and James Cardwell, Defendants–Appellants.

No. 26966.

Missouri Court of Appeals, Southern District, Division One.

March 29, 2006.

Robin Phelan Rogers, Dexter, MO, for Appellants.

Samuel P. Spain, Spain, Merrell & Miller, L.L.C., Poplar Bluff, MO, for Respondents.

GARY W. LYNCH, Judge.

Plaintiffs Edward (Eddie) and Jeneth Williams, husband and wife, filed a petition in the Circuit Court of Stoddard County against defendants Leonard Frymire, Beverly Frymire, Melissa Frymire and James Cardwell, seeking to quiet title by adverse possession to a .03 acre parcel of real estate and seeking injunctive relief from continuing trespass.[1] The trial court entered judgment in favor of Plaintiffs, and Defendants appeal. We affirm the judgment as to Defendants Leonard and Beverly Frymire and reverse the judgment as to Defendants Melissa Frymire and James Cardwell.

Defendants allege three points of trial court error. We will address those points in the order presented by Defendants.

### 1) *Judgment of Adverse Possession is Supported by Substantial Evidence*

Defendants' first claim of trial court error is: "[T]here was no substantial evidence to support a finding that [Eddie] and [Jeneth] and their predecessors in interest were in hostile and under a claim of right, actual, open and notorious, exclusive, and continuous possession of the disputed property for ten (10) years."

### a) *Standard of Review*

We are required to affirm the judgment of the trial court in this non-jury case, "unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Harness v. Wallace,* 167 S.W.3d 288, 289 (Mo.App. 2005). "The trial court's judgment is presumed valid, [and] the burden is on the appellant to demonstrate its incorrectness[.]" *Id.* (citing *Schaefer v. Rivers,* 965 S.W.2d 954, 956 (Mo.App.1998)).

In applying this standard of review, we defer "to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the judgment and disregarding all contrary evidence and inferences." *Watson v. Moore,* 8 S.W.3d 909, 911 (Mo.App. 2000) (citing *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991)). "That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony." *Id.* (citing *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988)). "The trial judge is in a better position than this court to determine credibility of the parties, their sincerity,

---

1. Because family members with the same last name of both plaintiffs and defendants are involved in the facts and testimony in this case, the plaintiffs will be referred to as Eddie and Jeneth, individually, and as Plaintiffs, collectively, and the defendants will be referred to as Leonard, Beverly, Melissa and James Cardwell, individually, and as Defendants, collectively. No disrespect is intended by the use of first names.

character and other trial intangibles which may not be shown by the record." *Walton v. Gilton*, 175 S.W.3d 170, 173 (Mo.App.2005) (internal citations omitted).

### b) *Factual Background*

When viewed in the light most favorable to the judgment, the evidence shows as follows.

Eddie's parents bought Lot 14 in Block 2 of Bedford's Addition to the City of Bloomfield (Lot 14) in 1948. Eddie was born a year later and was raised in the house situated on this lot.

In 1954, when Eddie was five years old, his parents acquired Lot 15 in Block 2 of Bedford's Addition to the City of Bloomfield (Lot 15) which was an unimproved lot adjacent to and immediately north of Lot 14. Each lot is 110 feet wide running east and west and 50 feet deep running north and south. The north boundary of Lot 15 is along an alley that is referred to as Rear Spring Street.

Shortly after buying and moving into the house on Lot 14, Eddie's father and older brother planted a line of trees running north and south on what was considered to be the west boundary of Lot 14. After purchasing Lot 15 in 1954, this line of trees was extended to the north by Eddie's father on what was considered to be the west boundary of Lot 15 (Tree Line). When Eddie was growing up, he understood that the yard around his house extended north to Rear Spring Street and west to the Tree Line. He mowed and played in this yard. When he mowed the yard, he mowed all the way to the Tree Line. The Williams family had a basketball court that was located in the yard in the proximity of the Tree Line. The family considered the Tree Line to be the boundary of their yard.

Eddie moved out of his parents' house when he was around seventeen years old but has continued to live around Bloomfield his entire life. Through the years, due to his father's health problems, Eddie continued to help maintain his parents' yard, including Lot 15, all the way west to the Tree Line.

Sometime in the seventies, Eddie and his father put in a gravel driveway from the carport on the west side of Lot 14, extending north and parallel to the east side of the Tree Line to Rear Spring Street on the north side of Lot 15.

In 1975, Eddie's parents rented Lot 15 to James Long who put a mobile home on the property. Mr. Long, and his wife, Beth, always maintained Lot 15 all the way to the Tree Line and also used the gravel driveway. The Tree Line was the recognized boundary line, and no one claimed otherwise.

Lot 15 was conveyed to Eddie by his parents in June of 1988. Eddie installed a modular home just east of the gravel driveway, moved onto the property and has resided there since. The area west of Eddie's home to the Tree Line is essentially Eddie's "side yard," as his house faces north toward Rear Spring Street. This side yard contains the gravel driveway. Since he set up his modular home, Eddie's activities on his side yard include mowing on a weekly basis during the mowing season, raking, picking up sticks, burning leaves and trash, and chipping golf balls. In 1995 or 1996, Eddie trimmed the trees on the Tree Line.

Eddie testified, without objection, that he and his predecessors in interest, his parents, have continuously, openly, and exclusively possessed and maintained Lot 15 west to the Tree Line under a claim of right since 1954.

When Eddie was a little boy, the property to the west of Lot 15 was owned by a Mr. Sherrill. Mr. Sherrill fenced that property up to the Tree Line and never maintained that property east of the Tree Line. The next two owners of the property west of Lot 15, Howard and then McCulley, never maintained it on the east side of the Tree Line. At some point in time owner Howard took down the fence erected by Sherrill. Sometime thereafter, Mrs. McCulley planted shrubs a couple of feet west of the Tree Line, about where the old Sherrill fence was formerly located. The Sherrills, Howards and McCulleys never possessed or maintained any property east of the Tree Line.

Leonard's brother, Steve Frymire, bought the property to the west of Lot 15 in 1993 from the McCulleys and lived there until he sold it to his mother and brother in 1996. During this time, Eddie continued to maintain Lot 15 west to the Tree Line and Steve Frymire never maintained or did anything east of the Tree Line.

Leonard, Beverly and Leonard's mother, Flora Frymire, purchased the property west of Lot 15 from Steve in 1996, taking title as joint tenants with right of survivorship and not as tenants in common. Flora passed away in November 2003 leaving Leonard and Beverly as the sole owners of the property. Before they purchased the property in 1996 Leonard had it surveyed, and this survey revealed the legal boundary of this property to be east of the Tree Line. Around that time, Leonard had a conversation with Eddie about this survey, informing Eddie that it indicated the boundary line between their property was to the east of the Tree Line. This was the first time anyone had ever claimed to Eddie that the boundary was east of the Tree Line. Eddie told Leonard that "[t]he tree line is the line and that's where it was gonna be."

After this conversation Eddie continued to maintain Lot 15 west to the Tree Line, and Flora, who was living in the house on the property west of the Tree Line, never tried to possess or maintain the property east of the Tree Line. Other than this conversation, there was no dispute as to the boundary line between these properties until May 2004, when Eddie started pouring a concrete driveway in essentially the same location as the gravel driveway. Leonard and Beverly claimed that this driveway was being constructed on their property.

In response to this claim, Eddie and Jeneth initiated this lawsuit on May 18, 2004. In the course of this litigation both parties had their respective properties surveyed. Both surveys agreed as to the location of Lot 15; the location of Leonard and Beverly's property to the west of Lot 15; and the fact that the west boundary of Lot 15 is adjacent to the east boundary of Leonard and Beverly's property. Plaintiffs' survey further identified and described a rectangular parcel of land (approximately 23 feet wide running east and west and 62 feet deep running north and south and containing .03 of an acre) in the northeast corner of Leonard and Beverly's property, the east boundary of which is adjacent to the west boundary of Lot 15 and the west boundary of which is the Tree Line. At trial the parties referred to this tract as the "Disputed Property," and we will do likewise. Until these surveys were completed, Eddie did not know that the Disputed Property was not within the boundaries of Lot 15.

c) *Elements of Adverse Possession*

■ Section 516.010, RSMo 2000 reads, in part:

No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession

thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

"Under this statute, a party claiming ownership by adverse possession must prove that their possession is: (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the ten-year period prior to the commencement of the action." *Harness*, 167 S.W.3d at 291 (citing *Henderson v. Town & Country Grocers of Fredericktown, Mo., Inc.*, 978 S.W.2d 850, 855 (Mo.App.1998)). Defendants challenge the trial court's judgment on each of these elements, claiming that there is no substantial evidence to support any of the five elements. We disagree on each element and deny Point I.

### i) *Possession of the Disputed Property was Hostile*

■■■■ "Hostile 'possession must be opposed and antagonistic to the claims of all others, i.e., the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another.' " *Harness*, 167 S.W.3d at 291 (citing *Teson v. Vasquez*, 561 S.W.2d 119, 127 (Mo.App. 1977). "The intent with which the occupant has held possession is to be determined from all the surrounding circumstances and especially from his acts." *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 159 (Mo.App.1979) (citing 3 Am.Jur.2d *Adverse Possession* § 35 p. 121). "It is the intent to possess and not the intent to take from the true owner that governs." *Id.* at 159–60. "To acquire title by adverse possession, the possessor need not intend to take away something which belongs to another and the possessor may even be indifferent as to the facts of legal title." *Id.* at 160.

■■■■ Defendants claim that "[i]f [Eddie's] possession of the disputed property were [sic] indeed hostile, one would expect some actions to be taken by him to assert his rights and show that he opposed and defied the [Defendants'] claim to the disputed property[.]" Because Defendants first made claim to the Disputed Property at the earliest in 1996, this argument completely ignores the intent of Eddie and his predecessors in title beginning in 1954.

In 1954, Eddie's father planted trees along what he and the family considered to be the west boundary line of Lot 15. From that point on, all of the actions of Eddie and his family are consistent with their purported intent to possess all of their yard over to the Tree Line. They thought that the west boundary of Lot 15 was the Tree Line, and they intended to possess all of Lot 15. The first claim otherwise occurred forty-two years later in 1996, when Leonard confronted Eddie about his survey. Eddie's response on that date, although not relevant to establishing adverse possession at that time, certainly is relevant to Eddie and his predecessors' intent during the statutorily relevant time period from 1954 to 1964: "The tree line is the line and that's where it was gonna be." There was substantial evidence to support that Eddie's and his predecessors' in interest possession of the Disputed Property was hostile.

### ii) *Eddie and his Predecessors in Interest had Actual Possession of the Disputed Property*

■■■■ "Actual possession may be shown by claimant's present ability to control land and intent to exclude others from such control." *Harness*, 167 S.W.3d at 292. "What acts will characterize possession as 'actual' depend on the nature and

location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case." *City of South Greenfield,* 591 S.W.2d at 160 (internal citations omitted).

Defendants claim that "[t]here was no substantial evidence offered by [Plaintiffs] to show any intent on the part of [Plaintiffs] to exclude others from control of the area, and therefore, [Plaintiffs] have failed to prove the element of actual possession." This is belied by the fact that Eddie's father planted the Tree Line and no one stopped him; Eddie's parents and then Eddie maintained and used over to the Tree Line as part of their yard for more than forty-two years without a contrary claim being made; Eddie's family and then Eddie lived on the property daily during this forty-two-year period, and no one ever made a claim that they were using or mowing someone else's property; and Eddie and his father put in a gravel driveway on the Disputed Property in the seventies without any complaint by anyone.

During this forty-two-year period, the only control exercised over the Disputed Property was by Eddie and his parents. The fact that during this period of time no one attempted or claimed to exercise control of the Disputed Property supports the inference that Eddie and his parents intended to exclude others from exercising any control. Given the character of the Disputed Property as a yard, it is clear, and there was substantial evidence, that in the relevant time period of 1954 through 1964, Eddie's parents, as his predecessors in interest, had the present ability to control the Disputed Property and intended to exclude others from such control by exercising the normal incidences of possession of a residential yard. *See City of South Greenfield,* 591 S.W.2d at 160.

### iii) *Possession of the Disputed Property was Open and Notorious*

"The next element is 'open and notorious possession,' which is demonstrated by proof that the claimant's occupancy was conspicuous, widely recognized and commonly known." *Thomas v. B.K.S. Dev. Corp.,* 77 S.W.3d 53, 60 (Mo.App. 2002) (citing *Compton v. Cain,* 829 S.W.2d 75, 78 (Mo.App.1992). "The reason for this requirement is to give the owner cause to know of the adverse claim of ownership by another." *Id.*

Leonard and Beverly complain that there is no substantial evidence to support this element of adverse possession because "neither [Eddie] nor his predecessors in interest took any actions which would give the true owner cause to know of an adverse claim of ownership. The occupancy of the disputed property by [Eddie] and his family was not so obvious and well recognized as to be inconsistent with the rights of the real owner." We disagree.

"To be open and notorious possession, there need not be a fence, building or other improvements." *City of South Greenfield,* 591 S.W.2d at 160. "It suffices that visible and notorious acts of ownership are exercised over the premises for the time required by the statute." *Id.* (citing *Sanderson v. McManus,* 252 S.W.2d 351, 356 (Mo.1952)). The open and notorious element of adverse possession " 'is satisfied by visible acts of ownership exercised over the premises,' such as maintaining and improving the property." *Kitterman v. Simrall,* 924 S.W.2d 872, 876 (Mo.App.1996) (quoting *Witt v. Miller,* 845 S.W.2d 665, 668 (Mo.App.1993).

Even though there need not be improvements to the property, the evidence is undisputed that Eddie's parents planted the Tree Line. This Tree Line constituted an improvement to the Disput-

ed Property. It is also undisputed that Eddie's parents maintained the Disputed Property, beginning in 1954 and thereafter, as part of their yard. This possession was so open and notorious that Leonard and Beverly's predecessor in title, Mr. Sherrill, only fenced his property over to the Tree Line. It is a reasonable inference that this was in deference to Eddie's parent's open and notorious possession of the Disputed Property to the Tree Line.

Likewise, another predecessor in title to Leonard and Beverly, Mrs. McCulley, deferred to Eddie's parent's possession of the disputed property by planting shrubs in the same location as Mr. Sherrill's fence west of the Tree Line. The actions of placing a fence and planting shrubs in recognition of the Tree Line as the boundary indicates that Leonard and Beverly's predecessors in title were in fact placed on notice of Eddie's parent's possession of the Disputed Property, because such possession was open and notorious.

This element of adverse possession is further supported by the testimony of many residents of the neighborhood. These witnesses covered several different time periods between 1954 and 2004. All of the neighbors who testified agreed that the Disputed Property had always been considered as part of Eddie's parents' yard and then his yard after he moved onto Lot 15. The lone fact that Eddie and his family mowed the Disputed Property from 1954 up until 1996 without any neighbor, including Leonard and Beverly's predecessors in title, claiming an interest otherwise is substantial evidence that the possession by Eddie's parents and Eddie was open and notorious.

### iv) *Possession of the Disputed Property was Exclusive*

■ "The fourth element is exclusive possession, which means that the claimant holds the land for himself and not for another." *Thomas,* 77 S.W.3d at 59. Leonard and Beverly contend that Plaintiffs "have failed to show that they have 'wholly excluded' the true owners from possession."

■ The evidence is clear and virtually uncontradicted that from 1954 until at least 1996, Eddie and his parents before him, used and maintained the Disputed Property as a part of their yard around their residence to the exclusion of all others for their sole benefit and not for the benefit of anyone else. There was explicit evidence by way of Eddie's testimony that he and his parents' acts of possession beginning in 1954 were for their benefit and were exclusive of any claim by another. The trial court was, of course, free to believe this testimony and give it such weight as it deemed appropriate.

■ Leonard and Beverly's reference to the Plaintiffs' failure to show that they have "wholly excluded" the true owners from possession refers to testimony by Eddie that people in the neighborhood through the years occasionally walked across the property and he never took any action to stop them. While Plaintiffs have the burden of proving exclusive possession for the statutorily required period, " '[t]his does not mean that mere sporadic use, temporary presence or permissive visits by others (including the title holder) will defeat a claim of exclusive possession.' " *Harness,* 167 S.W.3d at 292 (quoting *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App.1994)).

Eddie's claim that he and his parents have exercised exclusive possession of the Disputed Property beginning in 1954 is supported by substantial evidence.

### v) *Possession of the Disputed Property was Continuous for the Statutorily Required Time Period*

"Adverse possession must be continuous for a period of ten years, which means without lapse and uninterrupted for the statutory period." *Id.* (citing *Moore v. Quirk,* 81 S.W.3d 717, 721 (Mo.App.2002)). "An adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period." *Id.* (quoting *Conduff v. Stone,* 968 S.W.2d 200, 203 (Mo.App.1998)).

Leonard and Beverly contend that "[t]he acts which [Eddie] claims that he and his predecessors in interest have done on the disputed property are not regular and continuous and would be more seasonal and sporadic." This contention is contrary to the facts.

Beginning in 1954 and thereafter, Eddie's and his parents' activities related to the Disputed Property were neither intermittent nor sporadic. Their possession of the Disputed Property began with the planting of the Tree Line and was reconfirmed each and every time Eddie or a family member mowed up to the Tree Line. Granted that the yard was not mowed during the winter months, but such respite from the weekly chore of mowing the yard was more attributable to the lack of growing grass than to any interruption or abandonment in possession of the Disputed Property as a part of their yard. The act of mowing the Disputed Property year in and year out is a continuously recurring act which supports the continued claim of possession by Eddie and his parents. *See Miller v. Warner,* 433 S.W.2d 259, 264 (Mo.1968).

Leonard and Beverly contend that the failure to erect a fence around the Disputed Property indicates a lack of continuous possession. However, they ignore the fact that Eddie's father planted the Tree Line. This Tree Line serves the same purpose as a fence in identifying the boundary line for the possessed property. Leonard and Beverly also ignore the fact that their predecessor in interest fenced their property to this very same purported boundary line.

There was explicit evidence by Eddie's testimony that the possession of the Disputed Property was continuous from 1954 up until the day of trial. The trial court was free to believe, and obliviously did believe, this testimony.

Substantial evidence supports that Eddie's parents' possession of the Disputed Property commenced in 1954 and that this possession continued without any challenge or claim otherwise until Leonard and Beverly had the property surveyed in 1996. This period of time is in excess of the statutorily required ten-year period. "When adverse possession is once shown, it will be presumed, in absence of evidence to the contrary, to have continued in the possessor." *City of South Greenfield,* 591 S.W.2d at 159 (citing *Cash v. Gilbreath,* 507 S.W.2d 931, 935 (Mo.App.1974)).

Leonard and Beverly in their brief continuously cite this court to their proffered evidence concerning their actions and Eddie's actions commencing in 1996 up until this lawsuit was filed to challenge Eddie's claim of continuous possession. However, it is clear and undisputed by the evidence that the period of claimed adverse possession commenced in 1954 and blossomed into legal title in 1964. "Adverse possession for the statutory period establishes an indefeasible legal title in the possessor, the title of the record owner is divested, and that title is not lost by abandonment, or failure to assert it after it has been perfected." *City of South Greenfield,* 591 S.W.2d at 161 (citing *La Grange Reorganized School Dist. No. R–VI v. Smith,* 312 S.W.2d 135, 139 (Mo.1958)). Of course, the trial court was free to disbelieve all of Leonard and Beverly's evidence

as to the events occurring in 1996 and thereafter, but, even if believed in its entirety, nothing in that evidence was relevant to whether or not the Disputed Property was adversely possessed during the period of 1954 to 1964.

The determination by the trial court that the Disputed Property was continuously possessed by Eddie's predecessor in title for the statutory period was supported by substantial evidence.

### 2) *No Error in Failing to Impose Sanctions*

 Defendants contend in their second point that "[t]he Trial Court erred in failing to impose sanctions against [Plaintiffs]." This claim arises from the trial court's issuance of a Temporary Restraining Order (TRO) at Plaintiffs' request prohibiting Defendants from entering upon the Disputed Property. Defendants claim that the TRO was issued without any notice to them; that Plaintiffs did not have and failed to prove a reasonable basis to proceed without such notice; and that Rule 92.02(b)(6) provides that if a party obtains a TRO without notice and does not have a reasonable basis to proceed without such notice, the party is presumed to have acted in bad faith and to have violated Rule 55.03(b).[2] Defendants raised this issue in the trial court by filing their Motion to Set Aside Temporary Restraining Order and for Sanctions. This motion requested the trial court to set aside the TRO due to the lack of the required notice and that sanctions as provided in Rule 55.03(c) be imposed against Plaintiffs. In response to this motion, the trial court set aside the TRO but refused to impose any sanctions as requested.

Rule 55.03(c)(1)(a) provides, in part: "A motion for sanctions under this Rule 55.03 *shall be made separately from other motions or requests* and shall describe the specific conduct alleged to violate Rule 55.03(b)." (Emphasis added). Defendants' request for sanctions was coupled with and included Defendants' motion and request that the trial court set aside the TRO. This motion clearly contravenes the specific requirements and procedure of Rule 55.03, that the motion seeking sanctions be made separately from any other motion or request. The violation of the explicit procedural requirements of this rule denies the trial court of any authority to impose sanctions. *Robin Farms, Inc. v. Bartholome,* 989 S.W.2d 238, 250 (Mo.App. 1999). Because the trial court did not have any authority to impose sanctions, it did not err in failing to impose sanctions. Point II is denied.

### 3) *Trial Court Erred in Entering Judgment Against Dismissed Defendants*

Defendants' third point asserts that the trial court erred in entering judgment against Melissa and James Cardwell because Plaintiffs dismissed them as parties from this action before the trial. In their brief, Plaintiffs concede this point. Point III is sustained.

### 4) *Decision*

The judgment is affirmed in all resects as to defendants Leonard Frymire and Beverly Frymire and is reversed in all respects as to defendants Melissa Frymire and James Cardwell.

RAHMEYER, P.J., and PARRISH, J., concur.

---

**2.** All references to rules are to Missouri Court Rules (2005), unless otherwise indicated.