

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| DARL D. FERGUSON AND DELORIS M. FERGUSON TRUSTEES OF THE DARL D. FERGUSON AND DELORIS M. FERGUSON AMENDED IRREVOCABLE TRUST,<br><br>        Appellants,<br><br>v.<br><br>PEGGY HOFFMAN AND PENNY HOFFMAN,<br><br>        Respondents. | WD77674<br><br>OPINION FILED:<br><br>April 14, 2015 |

Appeal from the Circuit Court of Mercer County, Missouri
The Honorable Jack N. Peace, Judge

Before Division Two: Anthony Rex Gabbert, PJ., Karen King Mitchell, J. and
Mary Rhodes Russell, Special Judge

Darl and Deloris Ferguson appeal the circuit court's judgment denying their petition for ejectment and granting fee simple title by adverse possession of 22 feet of land to Peggy Hoffman on her counterclaim for quiet title. In their sole point on appeal the Fergusons contend that the court erred in finding that Peggy Hoffman acquired the property through adverse possession because notice of the boundary dispute did not occur until 2012 with joint possession by the parties since 2007 and Peggy Hoffman failed to meet the burden of proof for hostile,

actual, open and notorious and exclusive possession for the continuous relevant time period after notice of the boundary dispute. We affirm.

**Factual and Procedural Background**

Viewed in the light most favorable to the circuit court's judgment, the evidence adduced at trial showed that the Fergusons own real property directly adjacent to real property owned by Peggy Hoffman. Peggy purchased her property in 1991 and resided there until 2005. Though Peggy remains the record owner of the property, Peggy's daughter, Penny Hoffman, currently occupies the property. At dispute is a 22 foot strip of land located on the west edge of the Hoffman property and adjacent to the east edge of the Ferguson property.

From 1991 until 2005, only Peggy maintained the 22 foot strip of land at issue and she maintained it as her own. She testified that her intent in maintaining the property was to exclude others from using the property. Peggy's activity on the land was clearly visible. She mowed the lawn or arranged for it to be mowed and maintained a garden and peony bushes on the disputed strip of property. She allowed her grandchildren to play on a tree swing and trampoline located on the strip. After she moved from the property, her daughter continued to maintain the disputed tract.

Kent Donelson testified at the hearing. Donelson's father owned the Ferguson's lot from 1963 until 1978 and continues to own a lot adjacent to the Fergusons. Donelson testified that when his father owned the Ferguson lot, Donelson mowed the lot for him. He testified that he never mowed the 22 foot strip of property in dispute and it was always maintained by the property owners who owned what is now the Hoffman property. He testified that since Peggy Hoffman has lived at the property she has always maintained the 22 foot strip. Donelson testified that in the 1960's there was a fence located on the line dividing the properties, and after

2

the fence was removed there was a stake, or a steel rod, marking that boundary from 1963 until it disappeared approximately a year prior to the hearing. He testified that the rod was approximately an inch and a half thick and stood up from the ground approximately one foot. He testified that Peggy Hoffman always maintained the property consistent with the location of that stake.

Dick Hoover also testified at the hearing. Hoover resides on property that his parents purchased in 1967 and that is located directly north of the Ferguson property. Hoover testified that he grew up on the property. When asked if he recalled a steel rod located on the southwest corner of the Hoffman lot, Hoover testified that he believed there was once a fence post there. Hoover identified a photograph that his mother took in the 1970's that showed a fence located between what is now the Hoffman property and the Ferguson property with the disputed property being on the Hoffman side of the fence. Hoover testified that the Hoffmans and the previous owners of the Hoffman property always maintained the 22 foot disputed strip of property.

The Fergusons purchased their property in 2007. Darl Ferguson testified that he had no knowledge of how the land was used prior to 2007. He testified that prior to purchasing the property he visited the property and viewed it. When asked if he inquired of the previous owners where the property boundaries were, he testified that the previous owner "was unable to show me where the boundaries were." After he purchased the property in 2007 and until 2012, Ferguson testified that there was no dispute concerning the property and that he maintained what he believed to be his side of the property and the Hoffmans maintained their side of the property, including the 22 foot strip. He testified that Peggy and Penny Hoffman are very protective of their property.

3

In 2012, the Fergusons had their property surveyed and found that their deed included the disputed strip of land. On January 8, 2013, the Fergusons filed a Petition for Ejectment and Trespass asking the court to eject the Hoffmans from the property and award the Fergusons damages. On February 7, 2013, the Hoffmans filed an answer to the petition alleging as an affirmative defense that, pursuant to Section 516.010, RSMo 2000, Peggy Hoffman was the rightful owner of the property by way of adverse possession. Peggy Hoffman filed a Counterpetition for Quiet Title requesting, among other things, that the court enter a judgment granting her record title to the disputed tract.

A bench trial was held on March 25, 2014. On June 2, 2014, the court entered its Judgment and Order. The court found against the Fergusons on all claims and found that "Peggy Hoffman has established ownership by adverse possession of the disputed property. Her possession has been hostile, actual, open and notorious, exclusive and continuous for a period of time in excess of ten (10) years, since on or about April 30, 1991." On Peggy Hoffman's counterclaim for quiet title, the court granted her fee simple title through adverse possession of the disputed strip of property. The Fergusons appeal.

**Standard of Review**

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* "Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique." *Kitterman v. Simrall*,

4

924 S.W.2d 872, 876 (Mo. App. 1996). "Each case must be decided in light of its own unique circumstances." *Id.* "We start with the presumption that the court's judgment is correct and appellant has the burden to show otherwise." *Pike v. Williamson*, 403 S.W.3d 608, 612 (Mo. App. 2011) (internal citations and quotation marks omitted). We defer to the trial court's credibility determinations, recognizing that the court is free to accept or reject all, part, or none of the testimony presented. *Watson v. Mense*, 298 S.W.3d 521, 525 (Mo. banc 2009). We review questions of law de novo. *March v. Midwest St. Louis, L.L.C.*, 417 S.W.3d 248, 256 (Mo. banc 2014).

### Point on Appeal: Adverse Possession

In the Fergusons' sole point on appeal, they contend that the court erred in finding that Peggy Hoffman acquired the 22 foot disputed strip of land through adverse possession because notice of the boundary dispute did not occur until 2012 with joint possession by the parties since 2007 and Peggy Hoffman failed to meet the burden of proof for hostile claim, actual, open and notorious, and exclusive possession for the continuous relevant time period after notice of the boundary dispute. The Fergusons argue that notice of the boundary dispute is required before the clock begins to run to establish adverse possession and that, since they received no notice until 2012 when the survey was conducted, the ten year continuous period to establish adverse possession was not met. The Fergusons further contend the parties maintained joint possession of the disputed strip after the Fergusons acquired their property in 2007 and the joint possession supports their claim that Peggy Hoffman failed to prove adverse possession. We find no error.

> Adverse possession occurs when a border, even though erroneous, is observed by all parties as the boundary for the statutory period, and it becomes the true boundary. For title to be acquired by adverse possession, possession must be: (1) hostile, meaning under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years prior to the

5

commencement of action. The party claiming ownership by adverse possession has the burden of proving his claim by a preponderance of the evidence. A claimant may tack his period of adverse possession on to that of his predecessors to meet the ten-year requirement. Furthermore, the ten-year statutory period to confer title by adverse possession { "pageset": "S46 need not occur immediately prior to the suit. The adverse possessor is vested with title and the record owner is divested once the ten-year period has run.

*Nutting v. Reis*, 326 S.W.3d 127, 129-30 (Mo. App. 2010) (internal citations and quotation marks omitted).

The Fergusons do not contest the findings of the court with regard to its conclusion that Peggy Hoffman met the elements for establishing ownership by adverse possession of the disputed property for ten consecutive years after April 30, 1991. Instead, the Fergusons argue, in essence, that a person who has acquired title by adverse possession can be divested of that title if an owner subsequent to the individual who lost title can defeat any of the elements of adverse possession by his or her own actions. This is not the law and the Fergusons cite no law to support this proposition. The law is well settled that the record owners become divested of their property and adverse possessors become vested once all of the elements of adverse possession are met for ten years. *Kitterman*, 924 S.W.2d at 876. After title is vested, subsequent actions by subsequent owners are irrelevant to the trial court's analysis of whether adverse possession was previously established. *Humphreys v. Wooldridge*, 408 S.W.3d 261, 269-70 (Mo. App. 2013).

Here, the court found that Peggy Hoffman established ownership of the disputed strip of land by adverse possession through maintaining hostile, actual, open and notorious, exclusive, and continuous possession for a period of ten years starting on April 30, 1991. We find the court's judgment to be supported by substantial evidence.

6

The record reflects that Peggy Hoffman mowed the grass on the disputed tract of land from 1991 to well beyond 2001 and maintained a garden on that tract as well. There need not be a dispute between the two parties in order for the hostile element of adverse possession to be satisfied. *Watson,* 298 S.W.3d at 526. This element may even be met where there is a mistaken belief of ownership. *Id.*

"Maintenance of a disputed strip as a yard, including mowing the grass, planting trees and shrubbery, and occasionally using the area for recreational activities has been held to satisfy the requirement of actual possession." *Davis Estates, L.L.C. v. Junge*, 394 S.W.3d 436, 442 (Mo. App. 2013). "[I]t is not necessary that the adverse possessor enclose the disputed area in order to actually possess it, provided that he cultivates the entire tract." *Sommerlath v. Voss*, 449 S.W.3d 390, 395 (Mo. App. 2014).

The open and notorious element of adverse possession can be demonstrated by "proof that the claimant's occupancy was conspicuous, widely recognized and commonly known." *Williams v. Frymire*, 186 S.W.3d 912, 920 (Mo. App. 2006) (internal citations and quotation marks omitted). The open and notorious element of adverse possession "is satisfied by visible acts of ownership exercised over the premises, such as maintaining and improving the property." *Id*. Testimony of Peggy Hoffman's neighbors supported a conclusion that Peggy Hoffman's actions were open and notorious from 1991 to well beyond 2001.

In *Soderholm v. Nauman* we stated that, in the context of adverse possession, exclusivity means "that the claimant holds the land for himself and not for another." 409 S.W.3d 382, 388 (Mo. App. 2013) (internal citations and quotation marks omitted). "Maintenance of a residential yard such that it appears to be part of the property on which the residence is situated is evidence from which a trier of fact can infer that the possession of the property was exclusive." *Junge*,

7

394 S.W. 3d at 443. Here, the evidence reflects that Peggy Hoffman maintained and utilized the disputed tract of land for herself and her family. She never maintained the property for her neighbors and exclusively used and maintained the disputed strip from 1991 to well beyond 2001.

Thus, the record reflects that on or shortly after April 30, 2001, Peggy Hoffman acquired title to the disputed strip of property. After title to the property vested in Peggy Hoffman, the subsequent conduct by the Fergusons more than ten years later was irrelevant to the court's adverse possession inquiry. *Humphreys*, 408 S.W.3d at 269-70.

Nevertheless, the Fergusons argue that the "relevant time period" for assessing their adverse possession claim began in 2012 after the survey was conducted and they received notice of the boundary dispute. The Fergusons cite no case law to support this position. At the time the Fergusons had their survey conducted Peggy Hoffman had already owned the disputed 22 feet of property for approximately ten years. Thus, the 2012 survey did not serve as notice from Peggy Hoffman to the Fergusons of a boundary dispute, but notice to Peggy Hoffman from the Fergusons that they were asserting a claim to her property.

Further, while the Fergusons argue that Peggy Hoffman "did not meet the burden of proof for adverse possession because notice of the boundary line dispute was not known until 2012," the Fergusons presented no evidence at trial to refute the Hoffmans' claim that the Fergusons' predecessors in interest "recognized the crest of the hill as the property boundary." The Fergusons argued at trial, and argue on appeal, that all evidence at trial that involved events prior to 2005 was irrelevant. They argue that Kent Donelson's historical account of the property was irrelevant and "is only about possible mistakes in history," because the true boundary line was not discovered until 2012. The Fergusons are mistaken. Such history was relevant for the

8

court's determination as to when Peggy Hoffman's adverse possession of the property commenced.

"[A] boundary by acquiescence exists if there is an uncertain boundary and the landowners fix the boundary by an agreement that is presumed as a result of long acquiescence." *Fischer v. First American Title*, 388 S.W.3d 181, 189 (Mo. App. 2012) (internal citation and quotation marks omitted). "An agreement as to a boundary line may be proved by an express agreement or by acquiescence in a fence as a boundary for a period of time sufficient to evidence a mutual acceptance of the dividing line as the common boundary by the adjoining owners." *Id.* The acquiescence itself does not give title but does set a boundary. *Id*. Once this boundary is set then adverse possession may begin to run. *Id*.

Kent Donelson testified that onward from 1963 when his father first acquired the Ferguson land, the recognized and accepted boundary between the Ferguson and Hoffman property was such that the 22 foot strip of disputed property was on the Hoffmans' and the Hoffmans' predecessors' side of the boundary. While this extended history was not necessarily vital to the court's ultimate conclusion regarding the adverse possession issue, this evidence was relevant at trial to establish acquiescence to a boundary line long before Peggy Hoffman purchased the property. It is relevant to our consideration of the Fergusons' claim on appeal because it shows that the court justifiably concluded that Peggy Hoffman's adverse possession began to run immediately when she acquired the property in 1991.

The Fergusons also contend that they believed that they were purchasing all of the land included in the deed description of their property when they purchased their property. This, they assert, supports that Peggy Hoffman could not have acquired adverse possession of the 22 feet of land because that 22 feet was identified in their deed when they purchased the property. While

9

this is irrelevant because their purchase occurred after title vested with Peggy Hoffman,[1] the record does not substantiate their suggestion that they believed they were purchasing the 22 foot strip of land. While the deed may have included the 22 foot disputed tract, Darl Ferguson testified that he did not know where the actual property line was when he purchased the property. He testified that the previous owner was unable to show him the property line. When asked who he thought owned the peony bushes located on the 22 foot strip of land when he purchased the property he testified, "It was unknown." He further testified that, from the time he purchased the property in 2007 until the survey was conducted in 2012, Peggy Hoffman continued to maintain the disputed 22 foot tract of land and utilize it as she always had. There is no suggestion that Peggy Hoffman attempted to hide her use of that strip of land at the time the Fergusons purchased the adjoining property. In this case, a survey conducted prior to the purchase of the property would have put the Fergusons on notice that the deed to the property they intended to purchase was inaccurate.

## Conclusion

We conclude, therefore, that the circuit court did not err in finding that Peggy Hoffman acquired the disputed 22 foot tract of land through adverse possession. We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

---

[1]"In an adverse possession lawsuit, once adverse possession is established, the record owner—whose ownership would be shown in the public record—is divested of ownership, and the adverse possessor—whose ownership would not be shown in the public record—is vested with 'title' to the land." *Fischer*, 388 S.W.3d at 189.

10

All concur.