

# Missouri Court of Appeals

## Southern District

### Division One

MFA OIL COMPANY,                    )
                                    )
    Plaintiff-Respondent,        )
                                    )
    v.                           )    No. SD36063
                                    )
KEVIN MARTIN                        )    **Filed:  January 27, 2020**
and MARTIN PROPANE, LLC,            )
                                    )
    Defendants-Appellants.       )

APPEAL FROM THE CIRCUIT COURT OF DOUGLAS COUNTY

Honorable Elizabeth A. Bock, Associate Circuit Judge

**<u>AFFIRMED</u>**

Kevin Martin ("Defendant Martin") appeals from the trial court's judgment enforcing a covenant not to compete. Defendant Martin raises three points – (1) the trial court "erroneously declared and applied" the law because the covenant as enforced "is overbroad;" (2) the trial court "erroneously declared and applied" the law in enforcing Defendant Martin's covenant not to compete because MFA's offer and Defendant Martin's acceptance of a subsequent job as operations manager superseded Defendant Martin's 1999 Manager Agreement; and (3) the trial court "erroneously declared and applied" the law in enforcing Defendant Martin's covenant not to compete in that

1

Defendant Martin's covenant not to compete "is a prohibited restraint of trade" under section 431.202, RSMo 2016. We reject each of these points, and affirm the trial court's judgment.

### General Standard of Review

> "We are required to affirm the judgment of the trial court in this non-jury case, 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law.'" *Williams v. Frymire*, 186 S.W.3d 912, 916 (Mo. App. 2006) (quoting *Harness v. Wallace*, 167 S.W.3d 288, 289 (Mo. App. 2005)). . . . This court presumes the trial court's judgment is valid, and it is the appellant's burden to show otherwise. *Williams*, 186 S.W.3d at 916.

*Warren v. Dunlap*, 532 S.W.3d 725, 727 (Mo.App. S.D. 2017). "Where a misapplication of law is asserted, our review is de novo." *Smith v. Great American Assurance Co.*, 436 S.W.3d 700, 704 n.3 (Mo.App. S.D. 2014) (internal quotation marks and citation omitted).

In a court-tried case, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."[1] Rule 73.01(c), Missouri Court Rules (2019). "Our standard of review requires us to view the

---

[1] Defendant Martin does not complain that the trial court failed to make a finding of fact that Defendant Martin specifically requested the trial court to make, and has not referred us to any place in the record where Defendant Martin requested "findings on the controverted material fact issues specified by [Defendant Martin]" under Rule 73.01(c). Several days before trial, Defendant Martin did file a one sentence, general request for "an opinion including findings, on controverted material facts, in this case," and, a few days after trial, did provide proposed findings of fact and conclusions of law to the trial court by email. However, a general request for findings of fact and the submission of proposed findings to aid the trial court are insufficient to require the trial court to make specific findings under Rule 73.01(c). *See Rocking H Trucking, LLC v. H.B.I.C., LLC*, 427 S.W.3d 891, 894 n.1 (Mo.App. W.D. 2014) ("We are cognizant of the principle that 'even if a request for findings of fact under Rule 73.01 is made, a trial court need not make findings of fact unless the movant clearly and unequivocally specifies the controverted fact issues.' *Berlin v. Pickett*, 100 S.W.3d 163, 167 (Mo.App.W.D.2003)."); *Sneil, LLC v. Tybe Learning Center, Inc.*, 370 S.W.3d 562, 567 (Mo. banc 2012) ("In a court-tried case, 'it is the parties' duty to specifically request findings of fact and conclusions of law, identifying the issues they wish the court to decide.'[] *Hammons v. Ehney*, 924 S.W.2d 843, 849 (Mo. banc 1996). 'Merely submitting proposed findings to aid the court does not trigger the court's duty to make findings of fact and law.' *Id*." (footnote omitted)).

2

evidence in the light most favorable to the judgment and ignore all contrary evidence and inferences." ***Ward v. Dennis Oil Co.***, 560 S.W.3d 38, 39 (Mo.App. S.D. 2018).

**Facts and Procedural Background**

Defendant Martin and MFA entered into an agreement on May 10, 1999, as set forth in part below.

1.     <u>EMPLOYMENT</u>

MFA OIL hereby employs MANAGER [previously identified as Defendant Martin] as a manager at its bulk plant and/or propane plant in Seymour, Missouri, and MANAGER hereby accepts said employment subject to all the terms, conditions, and limitations hereinafter set forth.

2.     <u>RESPONSIBILITIES</u>

MANAGER is to serve as a bulk plant and/or propane plant manager at the plant referred to in Paragraph 1 above and in the surrounding territory as designated by MFA OIL. MANAGER agrees to actively solicit orders and make sales of the products of MFA OIL. . . . MANAGER agrees to devote his full time to the performance of his duties as bulk plant and/or propane plant manager as outlined in the MANAGER's job description a copy which is attached hereto as Exhibit A.[2]

. . . .

4.     <u>RULES and REGULATIONS</u>

MANAGER agrees to abide by all rules, regulations, and policies of MFA OIL which are now in effect or may hereafter be adopted.

5.     <u>COMPENSATION</u>

As the sole and only compensation to MANAGER for the performance of his duties hereunder, MANAGER shall be paid a wage, salary, or commission as the parties hereto have mutually agreed . . . .

6.     <u>TERM</u>

This AGREEMENT shall be for no specified period of time and may be terminated at any time by either party with or without cause and

---

[2] The attached job description is less than two pages.

with or without notice. Such termination shall not affect any obligation or liability of either of the parties hereto accruing prior to the effective date of such termination.

7.    NON-COMPETE

For a period of three (3) years after MANAGER leaves the employ of MFA OIL, MANAGER agrees not to work for another company engaged in the sale of petroleum products within a thirty five (35) mile radius of the MFA OIL AB7 Seymour plant. For a period of three (3) years after MANAGER leaves the employ of MFA OIL, MANAGER agrees not to individually engage in the sale or delivery of petroleum products within a thirty five (35) mile radius of the MFA OIL AB7 Seymour plant. MANGER acknowledges that this non-compete agreement is essential to his employment by MFA OIL and if he breaches this non-compete agreement MFA OIL may seek injunctive relief to enforce the provisions of this paragraph along with any other remedy available in law or equity.

8.    COMPLETE AGREEMENT

This AGREEMENT constitutes the complete agreement between the parties hereto, and may not be amended, changed or altered, except in writing, signed by the parties hereto.

Defendant Martin's first job with MFA was when he was "hired as a plant manager at Seymour[.]" About a year later, MFA moved Defendant Martin to Hartville as a plant manager for Laclede Electric, MFA Propane. After MFA "bought out" Laclede Electric, Defendant Martin continued as plant manager at Hartville for a short time before he became plant manager at Mansfield when MFA "merged" the Hartville and Seymour plants into a new plant at Mansfield.

In 2015, MFA "restructure[ed]" its employment organization and Defendant Martin became a "service tech" in Mansfield. As a service tech, Defendant Martin's interaction with customers was limited to talking with customers when he went to set a tank or pick up a tank. His salary as a plant manager was converted to an equivalent

hourly wage, but Defendant Martin lost his eligibility for a potentially substantial manager bonus.

A few months later in April 2016, Defendant Martin applied for and was selected to be an operations manager in Mansfield. Eventually, MFA moved Defendant Martin to Rogersville. In this position, Defendant Martin dealt with three plant managers. As an operations manager, Defendant Martin again was eligible for manager bonuses and his job description was more as a service manager.

On Friday, December 22, 2017, Defendant Martin sent an email to Andy Hays and Kenny Steeves with MFA. The email stated in part, "Please accept this as my formal notice of my resignation from MFA Oil. My last day will be Friday, January 5, 2018."

In March 2018, Defendant Martin organized Martin Propane LLC ("Defendant Martin Propane"), and is its sole member and employee. Defendant Martin Propane's business is "[r]etail propane sales," and Defendant Martin Propane is a competitor of MFA. Defendant Martin Propane has a large propane storage tank, plant, propane delivery truck, and tank trailer. The storage tank and plant are located at 3335 Highway 5, Mansfield, Missouri. The storage tank and plant, "most, if not all, of" Defendant Martin Propane's customers, and Defendant Martin's home where the propane delivery truck "sometimes" is kept, are within thirty-five miles of MFA's AB7 Seymour plant, and Defendant Martin individually is engaging in the sale or delivery of propane within thirty-five miles of MFA's AB7 Seymour plant.

When Defendant Martin resigned his employment with MFA, he "didn't know whether there was [a covenant not to compete] there or not, I didn't remember signing one." Defendant Martin "was probably 100 percent sure [he] was going to [start a

5

competing business with MFA] . . . toward the end of February, first of March" 2018, but began investigating steps toward that goal as early as August and October 2017 while he was still employed with MFA.

Defendant Martin's employment with MFA began on May 10, 1999, and "cease[d]" on January 5, 2018. During the entire period from May 10, 1999 through January 5, 2018, Defendant Martin was employed solely by MFA as a plant manager, as a service technician, and as an operations manager.

After resigning and leaving MFA on January 5, 2018, Defendant Martin did not do anything for "two months," and then started a propane business – "Martin Propane." Defendant Martin "formed [his] LLC . . . around the end of March or first of April" 2018. Defendant Martin then "spent the summer building a plant, buying a truck and trying to get insurance lined up and suppliers, carriers," and now has "approximately 30 customers, none of which are currently buying from MFA. They all own their own tank." MFA sued and asked that the trial court "not allow Mr. Martin to sell propane within 35 miles of our Seymour plant" individually or while working for another company.[3]

*Trial Court's Findings of Fact and Conclusions of Law*

The trial court entered a judgment against Defendant Martin on Count I of MFA's petition enforcing the covenant not to compete in Defendant Martin's May 1999 Manager Agreement according to its terms, but limiting the phrase "petroleum products" to bulk propane not sold for recreational use. The judgment provided Defendant Martin is "permanently enjoined" for three years from January 5, 2018, from individually or while "working for another company" selling bulk propane for other than recreational use

---

[3] Defendant Martin acknowledged that he is in violation of the terms of the covenant not to compete contained in his May 1999 Manager Agreement if that covenant is still valid.

within 35 miles of MFA's Seymour propane plant. The trial court entered judgment in favor of Defendant Martin Propane LLC on Count II of MFA's petition because MFA "failed to prove any damage."

**Analysis**

Defendant Martin raises three points – (1) the trial court, even with its limitation of the phrase "petroleum products" to bulk propane not sold for recreational use, "erroneously declared and applied" the law in enforcing Defendant Martin's covenant not to compete in that the covenant as enforced "is overbroad;" (2) the trial court "erroneously declared and applied" the law in enforcing Defendant Martin's covenant not to compete because MFA's offer and Defendant Martin's acceptance of an operations manager position superseded Defendant Martin's 1999 Manager Agreement including Defendant Martin's covenant not to compete that is included in that agreement; and (3) the trial court "erroneously declared and applied" the law in enforcing Defendant Martin's covenant not to compete in that Defendant Martin's covenant not to compete "is a prohibited restraint of trade" under section 431.202, RSMo 2016. Section 431.202, by its terms, applies to written covenants "promising not to solicit, recruit, hire or otherwise interfere with the employment of one or more employees." Section 431.202.1.

The trial court resolved these issues by finding Defendant Martin's changes in position with MFA were not a "breach" of Defendant Martin's 1999 Manager Agreement, and, if the changes were a "breach," Defendant Martin "waived" the breach by continuing his employment with MFA without objection to the changes. The trial court then concluded that the phrase "petroleum products" in Defendant Martin's covenant not to compete should be limited to bulk propane not sold for recreational use,

7

and, with that limitation, Defendant Martin's covenant not to compete was reasonable and should be enforced.

## Points I and II

A look at the four corners of the contract indicates that Defendant Martin agreed to a covenant not to compete for three years after he "left the employ" of MFA. Defendant Martin did not leave the employ of MFA Oil until January 5, 2018. Defendant Martin does not raise as an issue any of his early transfers, nor does he raise the issue that his employment as a service technician was a termination of his employment. The facts are that Defendant Martin was continuously within the employ of MFA and was a manager at the time of his resignation. The trial court did not err in finding that MFA did not breach the contract prior to Defendant Martin's resignation.[4]

As for the reasonableness of Defendant Martin's covenant not to compete that prohibited him from selling, directly or indirectly, bulk propane not sold for recreational use within the circular, 35-mile radius, geographic area where he had been the manager of a bulk plant and multiple propane plants for MFA, "precedent in Missouri supports the reasonableness of a two-year non-compete agreement for an operations manager that is limited to 50 miles from where services were rendered by the employee." *Whelan Security Co. v. Kennebrew*, 379 S.W.3d 835, 846-47 (Mo. banc 2012); s*ee also Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 74 n. 2 (Mo. banc 1985) (enforcing a non-compete agreement prohibiting an operations manager from working for a competitor in Missouri for a period of three years) and *Alltype Fire Protection Co. v. Mayfield*, 88 S.W.3d 120, 123–24 (Mo.App. 2002) (enforcing a two-year non-compete agreement

---

[4] We do not address the hypothesized situation whether the covenant would apply if Defendant Martin had been demoted to a service technician and remained in that position until his resignation or if there had been a lapse in employment.

8

spanning a 100–mile radius against a customer service representative). We cannot say as a matter of law that Defendant Martin's covenant not to compete for a period of three years in a 35-mile radius, as modified by the trial court, was not reasonable.

**Point III**

Defendant Martin argues that section 431.202 prohibits the covenant at issue because the covenant is a restraint on trade. Section 431.202 is not applicable to Defendant Martin's covenant not to compete because the statute by its terms is limited to written covenants "promising not to solicit, recruit, hire or otherwise interfere with the employment of one or more employees," and Defendant Martin's covenant does not promise not to do any of these things. Defendant Martin bases his argument on subdivisions (3) and (4); however, section 431.202.3 specifically states "[n]othing in[] subdivision (3) or (4) of subsection 1 of this section is intended to create, or to affect the validity or enforceability of, employer-employee covenants not to compete." Defendant Martin does not refer us to any authority that supports the application of section 431.202 to a traditional covenant not to compete as in this case.

Defendant Martin's three points are denied; the trial court's judgment is affirmed.


Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J., – Concurs

William W. Francis, Jr., J., – Concurs

9