John SNOW, Respondent

v.

William J. INGENTHRON and Janeth K. Ingenthron, Appellants.

No. SD 29193.

Missouri Court of Appeals, Southern District, Division Two.

May 28, 2009.

Mark A. Fletcher, Lathrop & Gage L.C., Springfield, MO, for Appellant.

Devon F. Sherwood, Sherwood, Honecker & Bender, Springfield, MO, for Respondent.

JOHN E. PARRISH, Judge.

William J. Ingenthron and Janeth K. Ingenthron (defendants) appeal a judgment that quieted title to certain real estate in Taney County, Missouri, by declaring fee simple absolute title vested in John Snow (plaintiff). This court affirms.

This is a case tried before the court without a jury. As such, the standard of appellate review requires that the judgment be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 950 (Mo.App.1995). "In applying this standard, we invoke the rule of due deference, and view the evidence in the light most favorable to the judgment, disregarding all contrary evidence and permissible inferences, and accepting the trial court's determinations of credibility." *Id.*

*Stewart v. Jones,* 90 S.W.3d 174, 178 (Mo. App.2002).

Plaintiff purchased real estate in Taney County, Missouri, in 1996 from Patricia Bowen and David Fisk Rhoden. Bowen and Rhoden are brother and sister. The property plaintiff purchased consisted of a 100′ × 100′ parcel, plus an additional .69 acre that was bordered on two sides by a fence, on a third side by the 100′ × 100′ parcel, and on the fourth side by the lake. Plaintiff received a warranty deed for the 100′ × 100′ parcel (on which a cabin was located) and a quitclaim deed for the remaining .69 acre.[1] Defendants claim ownership of the .69–acre parcel (the disputed tract). They presented evidence that legal title to the disputed tract had been in their family for more than 100 years; that it is part of a 227–acre tract.

Plaintiff testified that he occupied and used the property from the time he purchased it in 1996 until he moved from the property in 2004. He made a number of improvements on the property. In 1997 or 1998, he replaced the barbed wire fence that was there at the time of the purchase with a split rail fence. He built a garage and an addition to the cabin that was on the 100′ × 100′ parcel. He installed a septic system and built and installed a boat dock. He ran electricity to the dock. During the time plaintiff lived at the property, he maintained all of it, including the disputed tract. He mowed the property weekly or as otherwise needed.

Christopher David Bowen and John McKinley Bowen testified. They are the sons of Patricia Bowen, one of the persons

---

1. Plaintiff was provided with an affidavit of adverse possession from Patricia Bowen and David Fisk Rhoden that states that L.D. Rhoden and Patricia Bowen used and occupied the disputed property exclusively, openly, notoriously, adversely, and hostile to any claim of right of other persons from January 1980 until March 25, 1991. The affidavit further states that from March 25, 1991, through October 1996, Patricia Bowen and David Fisk Rhoden so used and occupied the disputed property. The affidavit was recorded in the deed records of Taney County on October 11, 1996. It was admitted in evidence at trial.

from whom plaintiff purchased the disputed tract and the 100′ by 100′ parcel that adjoins it, and the nephews of David Fisk Rhoden, the other person from whom plaintiff purchased the property. Their testimony was that they had been familiar with the property since the 1960s. Their grandparents owned the property and during part of that time, the grandparents used it as their residence. Christopher Bowen helped build the barbed wire fence that plaintiff later replaced with a split rail fence. His recollection was that the fence was built in 1977. He told the trial court that it would have been obvious to anyone who looked at the property that it was a residence and that all the property inside the fence was maintained. The property was mowed and kept in good condition. It was distinct in that the area outside the fence was a lot of woods, "underbrush, cedars, everything like that." Christopher Bowen was about ten years old when the sidewalk to the dock was built. He was present and recalls playing in the sand pile that was there while the sidewalk was being built. Christopher was 45 at the time of the trial.

John Bowen told the trial court that he spent summers at the property as a child and weekends as he grew older; that it was his grandparents' retirement home. As his grandparents grew older, his mother, brother, and he mowed the property. He said it was maintained in excellent condition all the time. John was asked if he had ever seen anyone other than his family and their invited guests use the property inside the fence. He answered, "No."

The trial court heard a number of witnesses who testified on behalf of defendants. William Ingenthron said he lived in California from 1969 through 1989, then in Arkansas until 2000. He said he was on the disputed tract during that time. He was asked how often he would have been using the disputed tract between 1989 and 2000. He said he was guessing an average of 18 times a year. He said he was guessing that he had been there "maybe a dozen times" after 2000.

Mr. Ingenthron acknowledged that there had been a barbed wire fence around the disputed tract in 1996 and that neither he nor his wife did any maintenance on the area inside the fence. The only use he asserted he ever made of the disputed tract was to walk to the lake, but he never did so when plaintiff was there.

Jan Ingenthron said she had given friends and relatives permission to use the property. Her own use of it included walking across it to get to a cemetery. She had never done any maintenance inside the fenced area, nor had she ever been on the boat dock that is presently located at the property. Her words were, "I have never touched the dock that now exists;" that she had "never ever gone on that dock."

Several of defendants' acquaintances and family members testified about using the land with defendants' permission. Generally, their testimony was that they knew of the disputed tract and had crossed it from time to time to get to other areas of defendants' 227 acres. One had been duck hunting at the property "probably seven times" from 1998 to 2000. Defendants' daughter had walked by the cabin on the 100′ × 100′ parcel in 1989. Her husband had walked on the land between the cabin and the lake once in 1989 and once in 2000 or 2001. Another witness said he had been on the disputed property probably a dozen times since 1993. He never saw anyone at the cabin when he was there.

Defendants' son said he had been on the disputed tract frequently until 1995. He recalled times there beginning "in '81 and

'82." He said he spent some time late at night at the dock but "usually left at one in the morning." He never saw anyone at the cabin when he was there.

Defendants present two points on appeal. Defendants assert that the trial court erred in finding that plaintiff had acquired title to the disputed tract by adverse possession in that the evidence did not support that plaintiff and his predecessors in title had maintained exclusive possession of the property (Point I), or that their possession of the disputed property was hostile and under a claim of right (Point II).

■ Plaintiff claims title to the disputed tract by reason of adverse possession. As such, he has the burden of proving by the preponderance of evidence the existence for the entire statutory period of each and every element of adverse possession. *Shuffit v. Wade,* 13 S.W.3d 329, 335 (Mo.App.2000); *Teson v. Vasquez,* 561 S.W.2d 119, 125 (Mo.App.1977). *See* § 516.010, RSMo 2000. "[Plaintiff] must show actual, hostile, i.e., under a claim of right, open and notorious, exclusive and continuous possession of the property for ten years." *Teson, supra.* Defendants' challenge to plaintiff's claim is directed only to plaintiff's proof that he and his predecessors in title maintained exclusive possession of the disputed tract and that their possession was hostile and under a claim of right.

■ In order to establish a claim of exclusive possession, a claimant must establish that for the prescribed period, claimant and his or her predecessors in title held the land for themselves and not for other parties. *Martens v. White,* 195 S.W.3d 548, 556 (Mo.App.2006). *Martens* explains:

> To meet this requirement, [a claimant] must have shown that [the claimant]

"wholly excluded" the owner from possession for the ten-year statutory period. *Flowers [v. Roberts],* 979 S.W.2d [465] at 470 [ (Mo.App.1998) ]. However, sporadic use, temporary presence, or permissive visits by others, including the record owner, will not defeat the exclusive element. *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App.1994). [A claimant's] burden is to show that the disputed land was neither open to the use of others nor jointly possessed with others. *Id.*

*Id.*

■ In addition to fencing the disputed area so as to separate it, laterally, from the land owned by defendants on either side, plaintiff and his predecessors in title neatly maintained the disputed tract by mowing and otherwise tending to it so that it appeared to be part of the area on which plaintiff's residence was situate. A concrete sidewalk that had been installed prior to plaintiff purchasing the property was improved. The sidewalk leads across the disputed tract to the boat dock that is attached to it. There was evidence that it would have been apparent to those viewing the area that the disputed tract was part of the parcel of real estate that plaintiff occupied for his residence.

Plaintiff believed he was purchasing, and intended to purchase, everything inside the fence. He removed the barbed wire fence that established the area and replaced it with a new split rail fence. He sought no one's permission to do so. From 1996, when plaintiff purchased the property, until he moved from it in 2004, he saw no one else on the disputed tract.

Although various witnesses testified on behalf of defendants about being at the property, their presence there was limited; primarily they were present in conjunction with the permissive use of the remaining part of the 227–acre parcel owned by de-

fendants. Defendants' evidence was not sufficient to overcome plaintiff's claim that he and his predecessors in title held the land for their exclusive use. Mindful that the task of weighing the evidence and assessing the credibility of the witnesses was that of the trial court, *Stewart v. Jones, supra,* there was sufficient evidence from which the trial court could find that plaintiff and his predecessors in title were in exclusive possession of the disputed tract for a time in excess of the ten years necessary to acquire title by adverse possession. Point I is denied.

■ To possess land in a manner that is hostile and under a claim of right, one's possession must be opposed and antagonistic to the claims of all others. *Leonard v. Robinson,* 276 S.W.3d 868, 875 (Mo.App. 2009); *Flowers v. Roberts,* 979 S.W.2d 465, 469 (Mo.App.1998). The claimant must occupy the land with intent to possess it as his or her own. *Id.*

When plaintiff purchased his property in 1996, he was made aware that the persons from whom he bought the property did not hold record title to the disputed tract. He made clear his intent to possess the disputed tract by requiring a quitclaim deed and securing an affidavit of adverse possession that stated the basis for his sellers' claim to the disputed tract. He recorded the quitclaim deed and the affidavit of adverse possession. As previously discussed, plaintiff continually acted in a manner hostile to any claim of title to the disputed tract by another. He maintained and replaced a fence that divided the disputed tract from the remainder of defendants' 227 acres. In addition to cutting grass and doing those things previously set forth, defendant replaced the dock that was tied to the disputed area. He added and ran electricity to the dock. Plaintiff did not do so out of ignorance to the surveyed boundary of the area he ac-

quired, but with the intention that all of the property, including the disputed tract, was his own. The evidence was that plaintiff's predecessors in title had done likewise. They had used the land that was conveyed to plaintiff, both the part that was described on the warranty deed he obtained and the part described on the quitclaim deed, as their own.

■ Defendants rely on the fact that plaintiff did not pay taxes on the .69 acre that makes up the disputed tract, and that plaintiff attempted to purchase additional land from them. Plaintiff explained that he did not know what he paid taxes on; that personnel from the county assessor's office made their assessment; that this occurred after plaintiff had acquired a building permit. Although the fact that failure to pay tax on a tract tends to show that possession of the property by that person is not under a claim of right, *Hoelmer v. Heiskell,* 359 Mo. 236, 221 S.W.2d 142, 145 (1949), it is but one factor for consideration. In this case plaintiff received a tax statement. He paid the taxes set forth on the statement. The trial court obviously believed this did not constitute proof that plaintiff did not occupy the .69–acre disputed tract that adjoined his other property.

Defendants also assert that plaintiff offered to buy the .69 acre from them; that this is inconsistent with him occupying the property under a claim of right. Plaintiff testified that he had inquired about purchasing additional property from defendants, but not the disputed tract. Plaintiff explained that what he inquired about buying was an area that was about "20 by 20" that he mowed around "and kept that up for them." Plaintiff told the trial court that he advised defendants that he would like to buy it if they desired to sell it. The "20 by 20" area was not adjacent to the

disputed tract, but was on the other side of plaintiff's house from the disputed tract.

The trial judge was fact-finder. In assessing the credibility of witnesses and in weighing the evidence, he could believe or disbelieve any testimony that was produced. He could believe all, part, or none of the testimony of any witness. *Wright v. Wright*, 975 S.W.2d 212, 215 (Mo.App. 1998). Considering the whole record, there was sufficient evidence for the trial court to find that plaintiff's occupancy of the disputed tract was hostile and under a claim of right. Point II is denied. The judgment is affirmed.

LYNCH, C.J., and BURRELL, P.J., concur.