Harold TROKEY and Beverly Trokey, husband and wife, Plaintiffs/Respondents,

v.

R.D.P. DEVELOPMENT GROUP, L.L.C., Donald L. Fennelly, Terri A. Fennelly, David Hiechel and Vicki J. Hiechel, Defendants/Appellants.

No. SD 32224.

Missouri Court of Appeals, Southern District, Division One.

June 4, 2013.

---

518

**WILLIAM W. FRANCIS, JR., J.**

R.D.P. Development Group, L.L.C. ("RDP"), Donald L. Fennelly and Terri A. Fennelly (the "Fennellys"), and David Hiechel and Vicki J. Hiechel (the "Hiechels")[1] appeal the "Judgment Entry and Order" ("Judgment") of the trial court entered in favor of Harold Trokey and Beverly Trokey (the "Trokeys"), which granted the Trokeys fee simple title in certain real estate. Appellants assert three points of trial court error. We affirm the Judgment of the trial court.

## Facts and Procedural History

The Trokeys filed a "Petition to Quiet Title–Adverse Possession"[2] ("petition") against RDP alleging that since 1975, they had been "in open, notorious, hostile, uninterrupted, and undisputed possession of additional real estate that immediately joins the Northern property line" of the Trokeys. This tract of land is 1819.17 square feet in area, and contains portions of a gravel driveway and a concrete driveway (the "disputed property").

Viewed most favorably to the judgment, *Schroeder v. Proctor,* 280 S.W.3d 724, 726 (Mo.App. W.D.2009), the testimony and evidence at trial established the following facts. In 1965, the Trokeys acquired ownership of a large tract of real estate in Camden County, Missouri. The Trokeys utilized the property as a resort, but also had a separate residence in which they had lived for 47 years. The property also contained a gravel driveway. Mr. Trokey

Matthew P. Hamner, of Camdenton, MO, for Appellant.

Steven S. Meier, of Nixa, MO, for Respondent.

1. R.D.P. Development Group, L.L.C., Donald L. Fennelly, Terri A. Fennelly, David Hiechel and Vicki J. Hiechel are referred to collectively as "Appellants."

2. At a hearing on March 31, 2011, the Trokeys requested oral leave of the court to file an amended petition correcting the legal description and adding the Fennellys and the Hiechels as parties having a record interest in the real estate. Over the objection of RDP, the court granted the Trokeys leave to amend their petition. A "Second Amended Petition to Quiet Title–Adverse Possession" was filed on May 11, 2011.

built a seawall and concreted a portion of the gravel driveway sometime in the early '70s. At issue in this case is a portion of the concrete driveway, and the gravel driveway adjacent to the concrete driveway.

On February 21, 1975, the Trokeys sold a portion of the large tract of real estate, specifically "parts" of Lots 24 and 25 of "The Boot Subdivision," to Edward W. Mehl, Jr. and Marlene Helen Mehl (the "Mehls"). A survey was prepared on January 23, 1975, prior to the sale of the property. Mr. Trokey testified they sold the Mehls "all the cabins" and kept their "house and the property that the house went with, which was a concrete driveway there at the time and about nine feet on the north side of the driveway."

The Mehls subsequently sold the property; however, the date of the sale is not clear from the record. There were three other owners before the Mehls eventually bought the property back through bankruptcy proceedings. Again, the date of their second purchase of the property is unclear.

While the Mehls owned the property, they continued to operate the resort and eventually leased the cabins[3] out on a long-term basis.[4] Mrs. Mehl testified at her deposition, which was admitted into evidence, that the concrete driveway belonged to the Trokeys. She acknowledged that part of the concrete driveway was on her property, but the Trokeys poured the concrete on the driveway, which was a benefit for all involved.

Mr. Trokey and Mrs. Mehl both testified the guests at the resort, the long-term renters, and the Mehls themselves, would all utilize the concrete driveway *and* the gravel driveway of the disputed property to get to the lake and a boat launching ramp on the lake. These individuals asked Mr. Trokey if they could use his concrete driveway when pulling their boats because it was easier to get them in and out. Mr. Trokey stated he never excluded any of these individuals from using the gravel and concrete driveways, and had no reason to deny permission. Mr. Trokey specifically testified that people in the resort area asked permission to use his driveway prior to using the disputed property, and they only used it when it was really necessary.

Mrs. Trokey also testified that the Mehls and their renters had used the driveways located on the disputed property and that she and her husband had never told them not to do so or excluded anyone from using the disputed property.

A survey was conducted in June 1995, and was purported to be prepared for the Trokeys.[5] The 1995 survey showed the Trokeys' property line cutting across and through the concrete driveway and not running to the edge of the seawall, indicating they did not own the disputed property. Mr. Trokey claimed the surveys showing the property line for his property running across and through the concrete driveway as "opposed to eight feet over," were all wrong.[6] Mrs. Trokey also testi-

3. The cabins were later "bulldozed down."

4. There was no testimony regarding the use of the property by the owners between the Mehls first and second purchase of the property.

5. Mrs. Trokey testified the survey was done as part of their attempt to refinance the property.

6. The Trokeys continually denied they had surveys of the property prepared, despite the fact that such surveys were specifically labeled as being prepared for them.

fied they had owned the disputed property for 47 years:

Q Okay. Your husband mentioned that you guys have owned this property for 47 years; is that correct?

A Well, we bought it in November of 1965, however many years that is.

Q Okay. And since you've owned it in November of 1965 up until this period in 2007, had you ever painted a line on the ground to show where you thought your property was?

A No, we didn't have to, we owned it.

Q And it's your position today—it's your opinion that you own this property; is that correct?

A What property?

Q The area of property that you're claiming in this suit.

A Yes.

Q It's your position that you own it; is that right?

A Yes.

Q And that you've owned it since 1975 when you carved out the piece of property and sold it to the Mehls?

A That is correct.

Q It's your belief that if there are surveys indicating that this property doesn't belong to you, that those surveys are incorrect; is that right?

A That is correct.

Sometime in 1998 or 1999, the Trokeys had a garage constructed and Mr. Mehl, who later sold the property to RDP, excavated the hole and was the contractor for the garage construction.[7] Since the construction of the garage, the Trokeys used the gravel part of the disputed property to pull into their garage because of the angle of the garage entrance. Without using the gravel driveway of the disputed property, the Trokeys claimed they would not be able to get in and out of their garage. They also occasionally used it for guest parking on the weekends or holidays, but not in the winter.[8] Mrs. Mehl also testified that the Trokeys, along with their resort guests, parked cars on the gravel driveways.

In March 2007, RDP acquired ownership of the real estate from the Mehls. At the time of this transfer, the property had not yet been subdivided into Fox Cove Estates and was still part of Lots 24 and 25 of The Boot Subdivision. A dispute arose between the Trokeys and RDP as to the property line and ownership of the disputed property when RDP began development of the Fox Cove Estates. Mrs. Mehl testified the Trokeys raised an issue with the property line location when they sold the property to RDP. As a result, several surveys were done, the results of which Mr. Trokey disputed.[9] This dispute eventually resulted in the Trokeys filing a petition alleging they adversely possessed the disputed property.[10]

7. Mrs. Trokey disagreed with this date given by Mr. Trokey and testified she believed the garage was built in 1995. However, she acknowledged the garage was not shown on the 1995 survey.

8. At some point, RDP gave permission to send the Trokeys a letter stating the Trokeys had parked vehicles on property owned by RDP. This letter was marked as Exhibit 20 and admitted into evidence.

9. Mrs. Mehl also testified the Trokeys wanted to buy a portion of her property at the time they were selling to RDP to use the gravel driveway to get in their garage, but the Mehls told them no.

10. The Fennellys and Hiechels are owners of lots in Fox Cove Estates and were joined as defendants as they could claim an interest in the disputed property.

As part of RDP's development, RDP planned to construct a house on the property immediately adjacent to the Trokeys' property, along with a path to allow the upper-tier homes access to the common dock. In the fall of 2007, Paul Pankiewicz ("Pankiewicz"), a partner with RDP, claimed Mr. Trokey was presented with architectural plans for the RDP housing project, along with the plat showing how the lots would lay and the boundaries of the construction work zone. Pankiewicz also claimed Mr. Trokey raised no objection to the plans at that time. However, Mr. Trokey denied being shown the plans by RDP.

About a year after Mr. Trokey was allegedly shown RDP's plans, Mr. Trokey raised objections to the lot line of the property. Mr. Trokey expressed concern regarding his ability to get into his garage based on the construction of a house adjacent to his property.[11] Mr. Trokey also claimed a path planned along the lot line was on the Trokeys' property. The property was surveyed again, and this survey also matched the first survey showing the Trokeys' property line cutting across and through the concrete driveway, and not running to the edge of the seawall.

At trial, the Trokeys acknowledged that there is no fence around the disputed property, and they never posted any "No Trespassing" signs on the disputed property. They also admitted that during construction of its development, RDP used the driveways without asking their permission. The Trokeys did not tell them or prevent them from using the driveways. Pankiewicz testified that Mr. Trokey parked a jet ski and an old boat on the gravel driveway of the disputed property closer to the lake until Pankiewicz asked him to move them, which Mr. Trokey eventually did.

The Trokeys testified they maintained the grassy area in the disputed property by mowing, trimming, and raking the grass, and disagreed with Mrs. Mehl's deposition testimony that she maintained the property. Mrs. Mehl testified there was no agreement with the Trokeys over mowing, but both the Trokeys and Mrs. Mehl mowed the grassy area. The trial court noted in the Judgment that the "Mehls also mowed a portion of the grassy area claimed by [the Trokeys]" Mr. Trokey testified he maintained the driveways for 47 years by placing gravel on the gravel driveway and grading it ten or fifteen times.[12] Mr. Trokey testified that neither Pankiewicz nor RDP did anything to, or made any improvements on, the disputed property.

Following trial, the trial court issued its Judgment on April 16, 2012, ruling in favor of the Trokeys and finding the evidence established the Trokeys were entitled to adverse possession of the disputed property. The trial court held that for 45 years, the Trokeys had used a portion of the gravel driveway and the concrete driveway for daily ingress and egress, which is located within the disputed property. Further, the trial court held that the Trokeys had "used and maintained" the disputed property for 45 years by mowing and trimming grass, storing items of personal property, and maintaining a seawall. In addition, the trial court granted the Trokeys' oral motion to amend their petition, presented at the close of evidence, to add additional property, not described in the original pe-

---

11. Pankiewicz testified Mr. Trokey only raised an objection to the lot line or property line when the foundation was put in for the second lake home, being built adjacent to the Trokeys' home.

12. Mr. Trokey also denied the Mehls either maintained the driveways or added gravel to the driveways.

tition, to their claim of adverse possession. This additional property was described as "that part of the triangular portion of the concrete driveway as is currently located and situated which lies North of and adjacent to this described tract of land." For ease of reference, we refer to this portion of the additional property as the "triangular portion" of land. Then, the trial court found the Trokeys had also used the triangular portion of land, described as "that triangular portion of the concrete drive which lies North of the 8 foot strip described on [the Trokey]s' Exhibit 23 [for 45 years] for ingress and egress to their residence." The trial court then divested from Appellants and granted to the Trokeys title in fee simple absolute to the disputed property, and the triangular portion of land.

On May 15, 2012, Appellants filed a "Motion to Amend Judgment or in the Alternative for a New Trial and Suggestions in Support." On August 8, 2012, the trial court issued its order denying the motion to amend the Judgment. This appeal followed.

The issues for our determination are:

1. Whether the trial court erred in holding the Trokeys were entitled to a judgment of adverse possession because such holding was against the weight of the evidence presented or was unsupported by substantial evidence.

2. Whether the trial court abused its discretion in granting the Trokeys' oral motion to amend their petition to add additional property to their claim of adverse possession at the close of evidence.

3. Whether the trial court erred in overruling Appellants' affirmative defense that the Trokeys' claim for

adverse possession was barred by the doctrine of laches.

### Point I: No Trial Court Error in Holding the Trokeys Were Entitled to a Judgment of Adverse Possession

#### Standard of Review

When we review a court-tried case, we will affirm the judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Snow v. Ingenthron*, 285 S.W.3d 415, 417 (Mo.App. S.D.2009) (internal quotation and citation omitted). "The trial court's judgment is presumed valid, [and] the burden is on the appellant to demonstrate its incorrectness[.]" *Harness v. Wallace*, 167 S.W.3d 288, 289 (Mo.App. S.D.2005).

The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence contrary to the trial court's judgment is disregarded. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). This Court defers to the trial court's credibility determinations. *Id.* "That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of any witness's testimony." *Watson v. Moore*, 8 S.W.3d 909, 911 (Mo.App. S.D. 2000) (citing *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988)). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).[13]

#### Analysis

To establish title to the disputed property, the Trokeys had the burden to

---

**13.** References to rules are to Missouri Court Rules (2013), unless otherwise indicated.

prove each of the following elements of adverse possession by the preponderance of the evidence: (1) hostile possession; (2) actual possession; (3) open and notorious possession; (4) exclusive possession; and (5) continuous possession for a period of ten years. *Meyer v. Lipe,* 14 S.W.3d 117, 120 (Mo.App. E.D.2000); *Casteel v. Yeary,* 77 S.W.3d 127, 129 (Mo.App. S.D.2002). "Whether the burden has been met depends upon the facts of each particular case, and consideration is given to the nature and location of the property, the uses to which it is put, the intent of the parties and all other facts and circumstances of the possession and use." *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 159 (Mo.App. S.D.1979) (en banc). If a party claiming adverse possession fails to prove even one of the five elements, his adverse possession claim must fail. *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App. S.D.1994). In their first point, Appellants challenge the trial court's judgment on each of the five elements claiming the Trokeys "failed to establish their claim for adverse possession." We disagree on each element and deny Point I.

We review the elements in the order stated above. First, the Trokeys' possession must be hostile, "that is, under a claim of right." *City of South Greenfield,* 591 S.W.2d at 159. " 'Hostile possession' means possession opposed and antagonistic to the claims of all others, and imports the occupation of land by the possession with the intent to possess the land as his own." *Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974).

Appellants argue the Trokeys' possession cannot be found to be hostile because they erected no barriers, posted no signs prohibiting use of the property, never excluded anyone from accessing or using the disputed property, and allowed the property owners and their renters to "freely" utilize the disputed property. However, Appellants' arguments misinterpret Missouri law on hostile possession. "To be hostile, it is not necessary to have actual malice, hostility, indifference or intent to take the property which belongs to another. The intent to possess, occupy, control, use and exercise dominion over the property is sufficient." *City of South Greenfield,* 591 S.W.2d at 159.

The intent of the Trokeys is determined from the surrounding circumstances and the Trokeys' acts. *Id.* It is undisputed the Trokeys claimed the disputed property as theirs and believed it was their property. On more than one occasion during his trial testimony, Mr. Trokey claimed the surveys indicating the property line for his property ran across and through the driveway as opposed to eight feet over were all wrong, and Mrs. Trokey testified they had owned the disputed property since the property was carved out for the sale of neighboring land in 1975 to the Mehls. The Trokeys testified they maintained the grassy area in the disputed property by mowing, trimming, and raking the grass, and maintained the driveways for 47 years by placing gravel on the gravel drive and grading it many times. The Trokeys' intent to possess, occupy, control, use and exercise dominion over the disputed property is also evident from the garage Mr. Trokey had constructed sometime in 1998 or 1999. The garage is adjacent to the disputed property and because of the angle of the entrance to the garage, the Trokeys have to use the gravel part of the disputed property to pull into the garage. Without using the gravel driveway, the Trokeys cannot get in and out of their garage. Their intent to use the disputed property is evidenced by the fact they built the garage in such a manner they are required to use the gravel drive-

way, so there was substantial evidence to support that the Trokeys' possession of the disputed property was hostile.

■■■■ We next consider if the Trokeys' possession was actual. "The element of actual possession is defined as the present ability to control the land and the intent to exclude others from such control." *Murphy v. Holman,* 289 S.W.3d 234, 238 (Mo.App. W.D.2009) (internal quotation and citation omitted). Whether an act establishes actual possession depends on the nature and location of the property, the use of the property, and the facts and circumstances of the case. *Id.* " 'Each case must be decided on its own peculiar facts.' " *Id.* (quoting *Teson v. Vasquez,* 561 S.W.2d 119, 125 (Mo.App. S.D.1977)).

■■■■ Appellants again argue the Trokeys allowed the property owners, their guests, and renters "continuous, uninterrupted use of the disputed property." However, the evidence does not support this contention. The only evidence of use of the disputed property during an identifiable period of time came from the Trokeys.[14] While Mr. Trokey did testify that guests at the neighboring resort, the long-term renters, and the Mehls themselves would all utilize the concrete driveway and gravel driveway, these individuals did ask permission prior to using the driveways. This would indicate Mr. Trokey exercised control over the disputed property by allowing people to use it when asked. Mr. Trokey stated he never excluded any of these individuals from using the driveways because he had no reason not to when they needed to pull their boats. The Trokeys maintained the driveways and grassy areas, and used the gravel driveway regular-

ly for egress and ingress to their garage. This is all substantial evidence that the Trokeys maintained "actual possession" of the disputed property.

■■■■ The next element is whether the possession was open and notorious. "To be open and notorious possession, there need not be a fence, building or other improvements. It suffices that visible and notorious acts of ownership are exercised over the premises for the time required by the statute." *City of South Greenfield,* 591 S.W.2d at 160. Visible acts of ownership can include maintaining and improving the property. *Williams v. Frymire,* 186 S.W.3d 912, 920 (Mo.App. S.D.2006). Proof that the Trokeys' use was "conspicuous, widely recognized and commonly known" can also establish open and notorious possession. *Id.* (internal quotation and citation omitted). Appellants claim the Trokeys did not put anyone on "notice that they were seeking to exercise exclusive control over the disputed property[ ]" because they allowed others to use the driveways and cut the grass on the disputed property "without ever excluding anyone in over thirty-five years." We disagree and conclude the evidence established that the Trokeys' claim was open and notorious.

■■■■ After review of the record before this Court, the only evidence before the trial court was that no one attempted or claimed to exercise control of the disputed property but the Trokeys until RDP began construction on the second lake home sometime in late 2007 or early 2008. The evidence is undisputed that Mr. Trokey had maintained the concrete and gravel driveways and grassy areas on the disput-

---

14. While Mrs. Mehl testified the Mehls and resort guests used the disputed property, the date of this use is unclear because the Mehls subsequently sold the property prior to the 2007 sale to RDP, and the date of that sale is unknown. There were three other owners before the Mehls eventually bought the property back through bankruptcy proceedings. The date the Mehls purchased the property for the second time is also unclear.

ed property since 1975, and there was no evidence that anyone ever made a claim during this time that the Trokeys were mowing someone else's property or complaints made about his maintenance of the driveways. *See Witt v. Miller*, 845 S.W.2d 665, 668 (Mo.App. E.D.1993) (noting the plaintiffs maintained and improved the property over a period of almost twenty years all while the record owners lived next door). This element is further supported by the Trokeys' testimony that they considered the disputed property a part of their property. *See Williams*, 186 S.W.3d at 920 (the open and notorious element was supported by testimony of residents that the disputed property had always been considered a part of claimant's yard).

In addition, the Trokeys' use of the disputed property was conspicuous and widely recognizable by the fact they built a garage which required use of the disputed property to gain access. No one stopped the Trokeys from constructing this garage, including Mr. Mehl the previous landowner and general contractor for the construction of the garage. In fact, Mrs. Mehl testified "[i]t was their driveway, because they built a garage there."

■ We next decide if the Trokeys' evidence showed exclusive possession. With respect to a claim for adverse possession, "exclusive possession" means "the claimant holds the possession of the land for himself as his own and not for another." *City of South Greenfield*, 591 S.W.2d at 160. Appellants claim the Trokeys failed to prove that possession of the property was exclusive. Specifically, Appellants claim the Trokeys' use was not exclusive because they have not "excluded

anyone from the disputed property in over thirty-five years and done nothing to restrict access to such property."

■ The Trokeys clearly hold possession of the disputed property for their benefit: to pull into their garage. Without using the gravel driveway, the Trokeys claimed they would not be able to get in and out of their garage. Appellants point out that guests at the resort and the Mehls also utilized the concrete driveway to pull their boats in and out of the lake. However, it is important to note that these individuals first asked Mr. Trokey if they could use his concrete driveway. Second, Mr. Trokey testified his driveway was used only when it was really necessary.[15] Mr. Trokey stated he had no reason to exclude any of these individuals from using either driveway.

■ While the Trokeys have the burden of proving the "exclusive possession" element, "sporadic use, temporary presence, or permissive visits by others," including the record owner, will *not* defeat the exclusive element. *Machholz–Parks v. Suddath*, 884 S.W.2d at 708 (finding evidence that people in the neighborhood occasionally walked across the property and the claimant did not take action to stop them did not defeat the exclusive possession element). The task of weighing the evidence and assessing the credibility of witnesses was that of the trial court. The trial court found the use by the Mehls and the Mehls' renters was mere "sporadic use, temporary presence or permissive visits" that did not defeat the Trokeys' claim of exclusive possession. We can find no evidence in the record before this Court that the use of the disputed property by others

**15.** Appellants note on multiple occasions in their brief that Mr. Trokey testified he "let people use it, go up and down it *all the time*, people that was in the resort area, and they would spin their wheels." (Emphasis added). This answer was in response to a question about the things Mr. Trokey did to maintain the disputed property. When asked how often he allowed people to go up and down his driveway, Mr. Trokey specifically testified "they very seldom ever used it. They only used it when it was really necessary."

amounted to more than sporadic, temporary, or permissive use. This is further supported by the Trokeys' belief that they owned the disputed property, as evidenced by the fact that they gave permission to others to use the driveway "when it was really necessary." We find, based on the record before this Court, that the Trokeys' claim of exclusive possession of the disputed property is supported by substantial evidence.

■■ The last element is that the Trokeys' possession must be continuous. The Trokeys testified they maintained the driveways for 47 years by placing gravel on the gravel driveway and grading it ten or fifteen times, and maintained the grassy area in the disputed property by mowing, trimming, and raking the grass. They also used the disputed property to enter and leave their garage starting sometime in 1998 or 1999. After a review of the record before this Court, we find this evidence is undisputed. The trial court's determination that the Trokeys' use of the disputed property has been continuous was supported by substantial evidence.

The Trokeys presented substantial evidence of each element of adverse possession. Additionally, after weighing the evidence, we do not have a "firm belief that the judgment is wrong." *Houston*, 317 S.W.3d at 186. For that reason, the trial court's ruling that the Trokeys were entitled to a judgment of adverse possession was supported by substantial evidence and was not against the weight of the evidence. Appellants' Point I is denied.

***Point II: No Abuse of Discretion in Granting the Trokeys' Oral Motion to Amend Their Petition to Add Additional Property to Their Claim of Adverse Possession at the Close of Evidence***

### Standard of Review

■■ Rule 55.33(b) provides

[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment[.]

"A trial court has broad discretion in allowing amendments to pleadings." *In re Estate of Goldschmidt*, 215 S.W.3d 215, 223 (Mo.App. E.D.2006). We will not disturb a trial court's ruling on a motion to amend a pleading absent "obvious abuse of [ ] discretion." *Cremer v. Hollymatic Corp.*, 12 S.W.3d 363, 369 (Mo.App. W.D. 2000).

### Analysis

Following closing argument by the Trokeys' attorney, the trial court had the following discussion with counsel:

THE COURT: That's one thing I wanted to ask you, because the concrete driveway extends north of that eight foot claim, and they're not claiming that?

[TROKEYS' COUNSEL]: North—well, yeah, that is the—they are, Judge. The eight foot just runs on the side of the driveway down to—

THE COURT: Well, all right, are they claiming all of the concrete drive, because part of the concrete drive is not on this eight foot, it lies even further on the property of—

[TROKEYS' COUNSEL]: I have to look at it, Judge. You're probably more on it than I. oh, [sic] I see what—the tail of the eight foot, yes, they are, they're claiming their entire—again, Judge, the concrete's going back to 1965, they had

it resurfaced once, so they are claiming—

THE COURT: How is it described anywhere?

[TROKEYS' COUNSEL]: The only way that it can be described is through the articulation of it on the survey. That's it. I don't have a metes and measures of it.

THE COURT: Your metes and bounds is just that eight-foot by 237-foot tract, and there's dispute that the concrete driveway extends north of that claimed—

[TROKEYS' COUNSEL]: That would be true.

THE COURT:—eight-foot area; is that true?

[TROKEYS' COUNSEL]: Kind of like a triangle, yes.

THE COURT: But they're asking for adverse possession of that portion of the concrete drive as well?

[TROKEYS' COUNSEL]: Yes, sir.

Appellants' counsel objected because that portion of property, the triangular portion of land, was not described in the Trokeys' petition or in their own survey, and they had not given any indication until that point in the proceedings that they were seeking to recover anything other than what was pled in their petition.

By way of the Judgment, the trial court granted the Trokeys' oral motion to amend their petition to conform to the evidence, and specifically found:

21. Defendants made no objection during the trial of this matter to the testimony of the [the Trokeys] that they had used the entire portion of the concrete driveway as depicted on [the Trokeys'] Exhibit 23 since February 21, 1975[,] for ingress and egress to their garage and residence.

The trial court went on to grant the Trokeys title in fee simple "TOGETHER with all that part of the triangular portion of the concrete driveway as is currently located and situated which lies North of and adjacent to this described tract of land."

At issue in Point II, is the triangular portion of the concrete driveway which is north of, and adjacent to, the described tract of land—the triangular portion of land. Appellants argue the trial court's ruling was error because there was no "specific testimony related to the additional portion of the drive"; the Trokeys made it clear in their testimony, and during closing argument, they were only seeking the property specifically identified in the survey; and any property the Trokeys were seeking had to be specifically pled and described.

 We find the trial court did not abuse its discretion by allowing the amendment to include the triangular portion of land. Under Rule 55.33(b), "when evidence is admitted without objection, we will deem the pleadings to have been amended to conform to the evidence." *RPM Plumbing Mechanical, Inc. v. Jim Plunkett, Inc.*, 46 S.W.3d 60, 62–63 (Mo. App. W.D.2001). While there is no evidence that Appellants expressly consented to trying the issue of the Trokeys' use of the triangular portion, the issue regarding the triangular portion was tried by implied consent. " 'Evidence received without objection will give rise to an amendment of the pleadings by implied consent only when it bears solely on the proposed new issue and is not relevant to some other issue already in the case.' " *Id.* (quoting *Kackley v. Burtrum*, 947 S.W.2d 461, 465 n. 3 (Mo.App. S.D.1997)).

This case is similar to *Arnett v. Venters*, 673 S.W.2d 67 (Mo.App. W.D.1984), in which grantees sought to quiet title to

certain land. On appeal, a "triangular 0.34–acre tract," which was never mentioned or described in any of the pleadings or the judgment of the trial court, was in issue. *Id.* at 71. The court noted "[b]roadly speaking, failure to timely and specifically object to evidence beyond the scope of the pleadings constitutes implied consent for determination of issues thereby raised[,]" and issues tried by implied consent are treated as if raised in the pleadings. *Id.* at 72. In *Arnett,* evidence which supported a finding that grantees adversely possessed the triangular 0.34–acre tract was presented at trial *without* objection. *Id.* at 71–72. The court found because the issue of title to the triangular 0.34–acre tract by adverse possession was presented in the evidence, the trial court was to adjudicate the same and render a judgment determining the parties' interest in the 0.34–acre tract. *Id.*

 Similarly, evidence which supported a finding that the Trokeys adversely possessed the entire concrete driveway, including the triangular portion of land, was presented at trial without objection. For that reason, the trial court did not abuse its discretion in granting the Trokeys' oral motion to amend the pleadings.[16] Appellants' Point II is denied.

### Point III: No Trial Court Error in Overruling Appellants' Affirmative Defense of Laches

In their third point, Appellants argue the trial court erred in overruling their affirmative defense that the Trokeys' claim for adverse possession was barred by the doctrine of laches because such a ruling was against the weight of the evidence,

was unsupported by substantial evidence and erroneously applied the law. Specifically, Appellants argue the Trokeys created the disputed property in issue when they sold a portion of the property to the Mehls in 1975, and were aware of the location of the property line when the property was surveyed following the 1975 sale, yet they failed to take any action.

### Standard of Review

 On review of a court-tried case, the judgment of the trial court will be affirmed unless substantial evidence does not support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence contrary to the trial court's judgment is disregarded. *Houston,* 317 S.W.3d at 186. This Court exercises the power to set aside a judgment on the ground that it is against the weight of the evidence with caution and should do so with a firm belief that the judgment is wrong. *Elton v. Davis,* 123 S.W.3d 205, 210 (Mo.App. W.D.2003).

### Analysis

 In *Higgins v. McElwee,* 680 S.W.2d 335 (Mo.App. E.D.1984), the Eastern District held that " '[i]nvocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom.' " *Id.* at 341 (quoting *Lyman v. Walls,* 660 S.W.2d 759, 761 (Mo.

---

**16.** We note that "[a] court should be liberal" in permitting amendments to conform to the evidence under Rule 55.33(b). *Cremer,* 12 S.W.3d at 370. "Courts are consistently admonished to be liberal in allowing [amendments to conform with the evidence]." *Prewitt v. Continental Ins. Co.,* 538 S.W.2d 902, 906 (Mo.App. ST.L.D.1976). The rules on amendments are designed for situations similar to the one at hand.

App. E.D.1983)). "Mere delay does not of itself constitute laches, the delay must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant. Equity does not encourage laches." *Higgins,* 680 S.W.2d at 341 (internal citations omitted).

■ Keeping in mind that credibility and the weight given to testimony is a matter for the trial court, *Watson v. Moore,* 8 S.W.3d at 911, we note the Trokeys testified numerous times they believed they owned the disputed property. While surveys may have been conducted purportedly on their behalf over the years, the Trokeys continued to deny having surveys prepared.[17] In light of the principles of the doctrine of laches cited above and the Trokeys' testimony, we find no error in the trial court's denial of the affirmative defense of laches. Appellants' Point III is denied.

The trial court's judgment is affirmed.[18]

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.

---

17. At most, the Trokeys admitted a survey was prepared in response to their attempt to refinance the property.

18. Appellants did not raise in this appeal an issue as to the accuracy of the property described in the Judgment which was awarded to the Trokeys. Even if the issue had been raised, Appellants did not include in their motion to amend the judgment a claim of error regarding the description of the property contained in the Judgment in order to preserve the issue on appeal. *See* Rule 78.07(c) (providing that "[i]n all cases, allegations of error relating to the form or language of the judgment ... must be raised in a motion to amend the judgment in order to be preserved for appellate review."). As a result, we do not address any issue regarding the description of the property awarded to the Trokeys contained in the Judgment.