

# Missouri Court of Appeals

## Southern District

### Division Two

THE EMPIRE DISTRICT ELECTRIC COMPANY, )
  a Kansas Corporation, )
and WESTAR GENERATING, INC., )
  a Kansas Corporation, )
                                )
           Respondents, )
                                )
   vs. )   No. SD35856
                                )
JOHN THOMAS SCORSE, as trustee under that )   FILED: January 13, 2020
certain Trust Agreement dated November 17, 1976, )
and its unknown successors and assigns, )
and JOHN THOMAS SCORSE, individually, and )
his unknown heirs and assigns, )
                                )
           Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

Honorable Kevin L. Selby, Judge

**<u>AFFIRMED</u>**

      John Scorse challenges the denial of his bench-tried adverse-possession claim, charging that the record conclusively established his right to relief as a matter of law. We disagree and affirm the judgment.[1]

---

[1] Rule references are to Missouri Court Rules (2016). We must view the trial record most favorably to the judgment, ignoring all contrary evidence and inferences. ***Village at Deer Creek Homeowners Ass'n v. Mid-Continent Cas. Co.***, 432 S.W.3d 231, 239 (Mo.App. 2014). For reader context, however, we will mention some evidence not strictly favorable to the judgment.

**Background**

The "Disputed Property" is a near-trapezoidal tract below, 15 acres of hilly, heavily-timbered, "wild Ozark property" bordered on the south by Shoal Creek and on the west by land the Scorse family bought in 1975 and where they have long raised cattle.



The Disputed Property is unsuitable for cattle grazing due to its topography and lack of pasture. There is a clear distinction and difference between the Scorses' meadow and the Disputed Property's brush, large timber, and downed trees. The Disputed Property is not in the Scorses' chain of title and Scorse makes no claim to that tract by deed or record title.

Respondents (the "Utilities") operate a power plant north of the Disputed Property. In 1999, they bought some 200 acres, including the Disputed Property, from Carl and Grace Elkans' larger tract for future plant expansion and direct access to Shoal Creek and had the land surveyed and pinned. The Elkans insisted that the Utilities lease all 200 acres back to them until their ranch manager Ron Scott retired, so their ranch operations continued until December 2005.

In 2008, the Utilities started to fence the boundaries of these 200 acres. They found no functional or clearly-visible border fencing on the Disputed Property, just a few old wooden fence posts and some strands of barbed wire primarily on the ground, running through the woods along parts of the tract's north

and west sides.  The Utilities bulldozed trees and fenced the tract's east side, then notified Scorse that they planned to fence the boundary with his land.  Scorse disputed the property line and removed fencing that the Utilities built along the property line of record.

In 2015, Scorse clouded the Disputed Property's title by purporting to deed it to a family trust.  The Utilities sued to quiet title.  Scorse counter-petitioned on an adverse-possession theory and sought summary judgment on his claim.  That motion failed, but per Rule 74.04(d) the court certified certain paragraphs of Scorse's statement of uncontroverted material facts ("SUMF") as "not in substantial controversy" and "established for all purposes of this litigation, including trial."  These "Rule 74.04(d) facts" are central to Scorse's arguments on appeal.[2]

At trial, the Utilities proved ownership of the Disputed Property through deeds of record, the Elkans' recorded affidavit of possession, testimony from a licensed title examiner, their payment of assessed property taxes since 1999, and plat books showing ownership by the Elkans and then by the Utilities.  The Utilities also offered extensive testimony against Scorse's adverse-possession claim.  The court ultimately entered a 39-page judgment, replete with findings of fact and conclusions of law, quieting title in the Utilities, rejecting Scorse's adverse-

---

[2] Two observations are in order as to these Rule 74.04(d) facts.  First, Scorse properly complains that the court ignored these somewhat in making arguably contrary findings in its judgment after hearing the evidence.  We have disregarded those findings to the extent they conflict with previously-certified Rule 74.04(d) facts, but only to that extent.

On the other hand, Scorse cannot fairly claim that his "enclosure" theory was factually established per Rule 74.04(d) and not contested at trial.  His SUMF paragraphs 5-7 asserted that an existing fence line had visibly enclosed the Disputed Property within the bounds of his family's land purchase back in 1975, a circumstance supportive of "open and notorious" possession.  *See, e.g.,* ***Heigert v. Londell Manor, Inc.***, 834 S.W.2d 858, 865 (Mo.App. 1992).  SUMF paragraphs 10, 45, 46, and 58 also made passing reference to such "enclosure."  The court initially deemed all those paragraphs to be Rule 74.04(d) facts, but wholly reversed that ruling when the Utilities demonstrated that such "enclosure" assertions were directly controverted by other evidence and remained in substantial controversy.  Seemingly missed in that purging was another passing "enclosure" reference in paragraph 49, upon which Scorse now seizes to assert that "enclosure" was an undisputed fact, a claim contrary to the fairly-viewed record and inconsistent with Scorse's presentation of evidence at trial.  At any rate, Scorse concedes that fence enclosure was merely evidence, but not conclusive proof, of the contested ultimate fact of "open and notorious" possession, a distinction further discussed *infra*.

possession claim, and expressly finding Scorse's testimony "not credible" in various respects.

## General Legal Principles

To win title by adverse possession, Scorse had to prove possession of the Disputed Property that was (1) hostile; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for ten years prior to the action. ***Trokey v. R.D.P. Dev. Group, L.L.C.***, 401 S.W.3d 516, 524-25 (Mo.App. 2013). Failure to prove even one of these five elements defeated his claim. ***Id***. at 525. We presume the court ruled against Scorse correctly and Scorse must prove otherwise. ***Id***. at 524.

## Discussion

Scorse asserts, as a matter of law, that uncontested facts conclusively proved each element of his adverse-possession claim "long before" the 1999 Elkans-to-Utilities sale, so the Elkans "lacked any title to transfer ...." Yet the "facts" Scorse cites are really items of *evidence* that a fact-finder normally weighs with and against all other evidence to determine the *ultimate* (or in summary-judgment parlance, material) facts from which a right to judgment flows.

These distinctions and their importance are worth reviewing. "Ultimate facts" and summary judgment "material facts" are equivalent concepts (emphasis below ours):

- "*Ultimate* facts are those the jury must find to return a verdict for the plaintiff." ***R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist***., 568 S.W.3d 420, 425 (Mo. banc 2019).

- "A *material* fact in the context of summary judgment is one from which the right to judgment flows." ***Goerlitz v. City of Maryville***, 333 S.W.3d 450, 453 (Mo. banc 2011).

- "[*M]aterial* facts are those *ultimate* facts that constitute the elements of a cause of action or affirmative defense, sometimes referred to as 'elements facts.'" ***Custer v. Wal-Mart Stores E. I, LP***, 492 S.W.3d 212, 215 (Mo.App. 2016).

"Evidentiary facts" differ, generally playing a subordinate persuasive role:

- "A proper verdict-directing instruction submits only the *ultimate* facts, not *evidentiary* details." ***Blanks v. Fluor Corp***., 450 S.W.3d 308, 395 (Mo.App. 2014).

4

- "[T]he facts that must be pleaded are the *ultimate* facts, not *evidentiary* facts." ***R.M.A.***, 568 S.W.3d at 425.

- "Credible, believable, even uncontradicted proof of *evidentiary* facts may not prove a contested issue of *ultimate* fact to the fact-finder's satisfaction." ***Black River Elec. Coop. v. People's Cmty. State Bank***, 466 S.W.3d 638, 640 (Mo.App. 2015).

*See also* ***Columbia Mut. Ins. Co. v. Heriford***, 518 S.W.3d 234 (Mo.App. 2017), a summary-judgment case which addressed at length the distinction between any item of evidence playing "a primary role as a material fact, where its mere existence is a fact from which the right to judgment flows," or only "a secondary, supporting role to that of a material fact—where its existence directly or inferentially tends to prove or disprove a particular material fact …." *Id*. at 240-44.

Scorse's conclusive-proof theory cites only evidentiary facts, which makes a difference, especially when Scorse bore the burden of persuasion. ***Black River***, 466 S.W.3d at 640.[3]  The ultimate facts – the five elements of Scorse's adverse-possession cause of action, each of which was Scorse's burden to prove – remained contested issues for determination at trial in light of Scorse's other trial evidence, the Utilities' counter-proof, and the court's evaluations of witness credibility and relative evidentiary weight.[4]

As one example, consider the contested ultimate fact of "open and notorious" possession – whether Scorse's occupancy of the Disputed Property "was *conspicuous, widely recognized, and commonly known*." ***Bowles v. McKeon***, 217 S.W.3d 400, 405 (Mo.App. 2007)(our emphasis).  On one hand, the Utilities' offered considerable evidence to the contrary which the court plainly credited.  On

---

[3] Scorse's SUMF (the source of his Rule 74.04(d) facts) suffered the failing we decried in ***Custer***.  A proper SUMF focuses on *material* facts – the *ultimate* "elements" facts "that constitute the elements of a cause of action or affirmative defense." ***Custer***, 492 S.W.3d at 215.  By contrast, Scorse's SUMF listed 72 numbered paragraphs of *evidentiary* facts, resulting in Rule 74.04(d) facts that likewise were evidentiary.

[4] "One way a party contests an issue is by contesting the evidence.… [A] party can contest evidence by putting forth evidence to the contrary, [but] also can contest evidence by cross-examination, or by pointing out internal inconsistencies in the evidence," etc. ***White v. Dir. of Revenue***, 321 S.W.3d 298, 308 (Mo. banc 2010)(citations omitted). "It is only when the evidence is *uncontested* that no deference is given to the trial court's findings." *Id*.  Even uncontradicted proof of evidentiary facts may not satisfactorily prove a contested issue of ultimate fact. ***Black River***, 466 S.W.3d at 640.

the other hand, Scorse's conclusive-proof theory rests primarily on an assertion that we have rejected: fence "enclosure" of the Disputed Property as an established Rule 74.04(d) fact. *See* footnote 2 *supra*.

That leaves Scorse to argue that Rule 74.04(d) evidentiary facts about his family's activities on the Disputed Property (erecting deer stands, drawing water, removing rocks for decorative purposes, marking various fence posts and trees with purple paint to warn others not to trespass) conclusively notified the Elkans of Scorse's adverse-ownership claim.

Yet the above ignores the Elkans' sworn affidavit of record, admission of which is not challenged on appeal, that:

- the Elkans physically possessed the Disputed Property continuously, openly, and exclusively from and after 1957;

- the Elkans maintained it;

- the Elkans exercised full dominion over it;

- the Elkans controlled it and intended to exclude others from control; and

- the Elkans considered themselves to be the true owners;

and further ignores:

- Ron Scott's testimony that he visited the Disputed Property several times annually during his 34 years of managing the Elkans' ranch, but never saw anyone there except the Utilities' agents resetting poles; specifically never saw Scorse there; and was unaware that anyone disputed the Elkans' record ownership.

- The trial court's finding, which the record supports, that the Disputed Property "is so wild and undeveloped, numerous people from both sides of this dispute used the property at or near the same time and no one knew of the other persons' presence or use."

- The legal principle that in wild-land cases like this, the requirement of open and notorious possession "may actually be heightened in order to put a reasonable property owner on notice that an adversarial claim was being made against the property." ***Luttrell v. Stokes***, 77 S.W.3d 745, 751 (Mo.App. 2002).

We need not belabor matters. The record did not conclusively establish the ultimate fact issue of open and notorious possession ("conspicuous, widely

6

recognized, and commonly known") in Scorse's favor.  This failure alone dooms his sole point and ends our inquiry.  ***Trokey***, 401 S.W.3d at 525.  Judgment affirmed.


DANIEL E. SCOTT, P.J. – OPINION AUTHOR

JEFFREY W. BATES, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS